THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES MOFFAT, Defendant-Appellant.

First District (4th Division) No. 1—87—1366

Opinion filed June 28, 1990.—Modified on denial of rehearing September 20, 1990.

44

Williams & Marcus, of Chicago (James I. Marcus and John F. Dziedziak, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Elizabeth Sklarsky, and Avery L. Goodrich, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial, defendant, James Moffat, was found guilty of multiple counts of official misconduct and indecent liberties with a child. He was sentenced to concurrent terms of imprisonment of 15 years for the indecent liberties counts and five years for the official misconduct counts.

On appeal, defendant raises the following issues: (1) whether the evidence was sufficient to prove his guilt beyond a reasonable doubt; (2) whether the evidence presented at trial was prejudicially at variance with the indictments and the bill of particulars; (3) whether he was deprived of a fair trial due to judicial and prosecutorial misconduct; and (4) whether the trial court abused its discretion in sentencing him. Defendant seeks reversal of his conviction, or reversal of his conviction and remand of the cause for a new trial before a different judge, or remand for resentencing before a different judge.

We affirm in part and vacate in part.

At trial the evidence established that defendant, employed by the Chicago Board of Education since 1956, had been the principal at Kelvyn Park High School (hereinafter Kelvyn) from October 1, 1980, to March 22, 1985. Darlene Stahl, defendant's assistant principal, tes-

tified that defendant made certain improvements to his office shortly after he arrived. According to Ms. Stahl, defendant closed off a 12- by 6-inch vent with a piece of wood. Prior to defendant's arrival at Kelvyn, members of the school's staff would peer through this vent to determine whether anyone was in the principal's office.

At defendant's request, carpeting was also installed which, in effect, blocked out any space under the door to his office. The only way to determine whether anyone was in defendant's office would have been to peer through the transom located over his door. This, however, would have necessitated the use of a ladder in order to reach the transom.

Ms. Stahl noted that defendant kept the doors to his office locked and asked school personnel not to disturb him when his door was closed. She also stated that she had observed some provocative items in defendant's office.

Marsha Niazmand testified that she had been a social worker for the Board of Education since 1976. She worked with some of the students at Kelvyn from March 1983 to January 1985. When defendant found out that she had been counseling a particular student, he asked for a list of all of the other students who sought counseling from her at Kelvyn. Defendant then accused Ms. Niazmand of spreading rumors about him. Ms. Niazmand testified that she thought defendant was responsible for having her transferred from Kelvyn.

The first accusing witness to testify was the only female out of the five accusing witnesses. This witness was a student at Kelvyn. She testified that on or about October 31, 1983, she was taken out of class and escorted into defendant's office by her boyfriend, another one of the five accusing witnesses. Approximately one week prior to this, her boyfriend had discussed taking her to defendant's office.

While this witness was in defendant's office, her boyfriend asked her to disrobe. When she hesitated, he told her that he would also disrobe. She then took off her clothes in a closet in defendant's office. Defendant was lying on the floor when she emerged from the closet. The witness stated that she positioned herself over defendant and defendant proceeded to perform cunnilingus on her while her boyfriend watched. After this act she had sexual intercourse with her boyfriend in defendant's presence. She then had sexual intercourse with defendant. At the time of this incident, the witness was 14 years of age. She testified that this was the only sexual encounter she had with defendant. Subsequently, she left Kelvyn due to a fight she had with another female student. She also testified that she left the school because defendant had failed to protect her, as he had promised, from

the repercussions of her dispute with this other student.

We note that the other student who was involved in the fight had also been brought to defendant's office by the first accusing witness' boyfriend. During her first encounter with defendant, she reluctantly exposed one breast to defendant while in his office. Defendant proceeded to touch her breast but noticed that she appeared to be frightened. Although he requested that she not be brought back to his office, he summoned her to his office several days after this first encounter and asked her some "personal" questions.

The second accusing witness to testify was also a student at Kelvyn during defendant's tenure as principal. This witness was a member of the school's football team. On or about October 14, 1982, when this witness was approximately 15 years of age, defendant stopped him as he was walking down one of the school's hallways. Defendant asked him to come to his office. Prior to this encounter, this witness testified that he had had a conversation with another member of the football team regarding going to defendant's office. Defendant asked this witness whether he had talked to this particular team member. After indicating that he had, defendant asked him if he was "ready." This witness responded that he was, and defendant proceeded to perform an act of fellatio on this witness in his office.

Approximately three weeks later, defendant came across this witness again in the hallway just after the witness had been asked to leave one of his classes. Defendant told the student to come to his office, where he again performed an act of fellatio on this witness. After this act, the witness asked defendant for money. Although the witness had previously told someone from the office of the State's Attorney that defendant gave him $50, he testified at trial that defendant had only given him $5.

The last sexual encounter this witness had with defendant occurred on or about March 24, 1983. Defendant went to this witness' math class and arranged for him to leave the class. Defendant then took the witness to a room on the first floor of the school and fondled him. Subsequently, the witness transferred from the school. He did not tell his parents or the police about these incidents with defendant because he was afraid of the possible repercussions.

The next witness to testify was not one of the accusing witnesses. This witness did, however, have a sexual encounter with defendant. At the time of the encounter this witness was 22 years of age and attended a junior college in the Chicago area. The witness testified that she was taken to defendant's office by her boyfriend and one of the accusing witnesses. This was the same accusing witness who had

procured two other female students, including the only female accusing witness, for defendant. This incident occurred in 1983 during the first week in November. The witness testified that she was taken to defendant's office. Once inside the office, her boyfriend told her to take off her shirt. She complied by removing her shirt and her blouse. While she undressed, defendant took off his pants. Defendant then proceeded to fondle her. He asked the other two males who had accompanied her into the office if they wanted to "join in the party." Both declined. When the witness told defendant that she was nervous, he then attempted to fondle her boyfriend. After her boyfriend rebuffed defendant's advances, she and defendant both dressed and proceeded to go to a football game. She did not sit with defendant at the game but met him after the game. Defendant later dropped her off a block from her house.

The third accusing witness to testify was also a student at Kelvyn. He was first approached by defendant in the school's lunchroom. Defendant told him that he would like to get to know him. This witness was then 15 years of age. During the second semester of the 1983-84 school year, the witness began to work in the school's main office.

Defendant confronted the witness during the latter part of March and asked if he was homosexual. The witness responded that he was not sure. Defendant then told him that he should know his sexual preference because he was young and attractive and could get anything he wanted, using his looks.

The next encounter this witness had with defendant occurred in April 1984 in the school's lunchroom when defendant suggested that the witness come to his office to discuss his failing grades. The witness testified that when he entered defendant's office, defendant closed the door. Defendant told the witness that his grades were poor but that he could do something about it if the witness would "play" with him. Initially, the witness declined the offer. Defendant then threatened that if he did not cooperate, his "grades would be really bad and that [defendant] could make it so that [the witness] couldn't go into other good schools and that his parents would [become] furious." The witness then agreed to cooperate with defendant.

The witness stated that he was then forced to perform an act of masturbation on defendant. After that, defendant performed an act of fellatio on the witness. Defendant then asked the witness if he could have anal intercourse with him. Although the witness refused, defendant still attempted to perform the act on the witness. Defendant stopped when the witness informed him that he was a virgin. Defend-

ant then took the witness' penis and guided into his rectum. After this act was completed defendant promised that he would "fix" the witness' grades. The witness, however, received all failing marks at midterm.

In May 1984, the witness' counselor told him that she was going to suspend him and that he would have to bring his mother to school. This witness later told defendant about his impending suspension. Defendant informed him that he could prevent the suspension. Defendant then told the witness to meet him in his office. Once inside the office, defendant proceeded to have anal intercourse with the student.

After this act, defendant asked the witness if he could take nude pictures of him. He also asked the witness if he could bring any other "kids" to his office. The witness did not follow through with either request. Subsequently, the witness transferred to another school.

The fourth accusing witness to testify was also a student at Kelvyn. He was a member of both the football and basketball teams. At the time of his first sexual encounter with defendant, the witness was in his sophomore year in high school. Concerned that he would not be able to participate in team sports because of poor grades, he approached defendant. Defendant told him that he would help the witness with his grades if he agreed to have anal intercourse with him. The witness then reluctantly allowed defendant to have anal intercourse with him. This act took place in defendant's office.

This witness next encountered defendant during the second marking period of the school year. The witness again informed defendant that he was having difficulty with his grades. The witness testified that he then had anal intercourse with defendant in his office.

The next sexual encounter with defendant came in June of the witness' sophomore year. The witness had anal intercourse with defendant in exchange for defendant arranging for him to attend Orr High School's summer session.

The following October, during the witness' junior year, he approached defendant about his failing grades. The witness again had to submit to anal intercourse with defendant. At some later time in the month of October, this witness told defendant that he no longer wished to have anal intercourse with him. The witness, however, agreed to allow defendant to perform fellatio on him.

Later in the week, defendant paged the witness out of class to have oral sex with him. Defendant told the witness that he would have to come to his office twice a week so that defendant could have oral sex with him. Twice a week from October 1983 until February

1984, this witness allowed defendant to have oral sex with him. In February of 1984, according to the witness, defendant told him they would have to discontinue this practice because he felt the teachers may be aware of these activities. The witness graduated in August 1984.

It was also revealed at trial that, contrary to his testimony, this witness had previously denied having any sexual encounters with defendant to some of his teachers and several basketball teammates. The witness explained that he had denied the incidents out of embarrassment. He did not want to give them the impression that he was homosexual.

This witness also admitted to having told an investigator that defendant had shown him nude photographs of various students when, in fact, defendant had shown him photographs of naked women in some commercial magazines. The witness testified that defendant kept these magazines in one of his desk drawers.

The next witness to testify was not one of the accusing witnesses but he had also been approached by defendant. At the time of trial, this witness had a civil suit pending against defendant. The witness testified that during his freshman, sophomore, and part of his junior year at Kelvyn, he worked in the main office. He worked in the computer room the remainder of his junior year.

This witness' first encounter with defendant came during his sophomore year at the school. The witness entered defendant's office to deliver a message. While in defendant's office, defendant remarked that he was a "fine young man, very handsome," and proceeded to massage this witness' shoulders. The witness responded to defendant's advances by telling him that he had to get back to work and then proceeded to leave defendant's office.

The next encounter this witness had with defendant was in the boys' washroom on the second floor of the school building. While using the urinal, defendant observed and made some remark about this witness' penis.

The last notable encounter this witness had with defendant occurred in defendant's office. On this occasion, defendant locked his door and proceeded to massage this witness' shoulders. Defendant then unzipped this witness' pants and was about to perform an act of fellatio on the witness when someone knocked at his door. Defendant told the witness to get dressed and leave through another door in his office.

This witness also testified that after these three incidents his grades began to drop. He admitted to engaging in homosexual activi-

ties while he was a junior at Kelvyn. Although the witness did not tell his mother about these incidents, he did comment to two of his teachers at Kelvyn that defendant went "both ways." This witness eventually withdrew as a student from Kelvyn.

The fifth and last accusing witness to testify was 18 years of age at the time of his sexual encounters with defendant. This witness testified to having conversations with defendant in 1981, prior to his transferring to Kelvyn in December of that same year. This witness then dropped out of Kelvyn in March 1982 but returned the following September.

The witness testified that defendant told him in the spring of 1982 that he could arrange for him to transfer back to Kelvyn, receive a basketball scholarship, and change his grades. This would be in exchange for allowing defendant to perform fellatio on him. The witness agreed to this and began meeting defendant in his office two or three times a week. On each occasion defendant had oral sex with the witness. This practice continued until the time the witness withdrew from Kelvyn in March of 1984.

This witness also corroborated the testimony of the female accusing witness and two other female witnesses who alleged sexual encounters with defendant. In fact, this accusing witness accompanied these females to defendant's office and remained in defendant's office during the encounters.

In June 1983, defendant allegedly took nude photographs of this witness while performing an act of fellatio on him. Several days after this, defendant attempted to engage the witness in anal intercourse. Defendant failed in his first attempt but was successful in his second attempt some time later.

In the spring of 1984, the witness told defendant that he no longer wanted to participate in defendant's sexual antics. The witness then inquired as to when he was to receive his diploma. The witness also informed defendant that he intended to withdraw as a student from the school. Defendant tried to dissuade him from leaving by asking him to stay and become his "main man." The witness declined and subsequently dropped out of Kelvyn. Although defendant contacted the witness by telephone and visited the witness' home, he had no further sexual contact with the witness.

Several teachers from Kelvyn also testified concerning the apparent relationship between defendant and this last accusing witness. Ms. Margaret Harris testified that defendant asked her to send the witness' cut slips directly to him. The usual practice had been to send the slips to a student's division.

Another teacher, Ms. Maxine Lowe, testified that this same student had brought in passes signed by defendant when he was late or missed one of her classes. She testified that he brought in approximately 36 passes signed by defendant. When she confronted the student as to why he was being excused, the student responded to her inquiry by smiling.

Subsequently, defendant had this student transferred out of Ms. Lowe's class and into a gym class. Ms. Lowe also testified that defendant made advances toward her and had asked her out on numerous occasions. She ignored all of his advances and declined invitations to go out.

Ms. Rochelle Drolson, a general science teacher, testified that on at least six occasions this last accusing witness would be called out of her class, via the school's intercom, and into the main office. She also testified that this student had come to her class late on three occasions with passes signed by defendant.

In the spring of 1983, this same student told her that defendant would probably be paging him out of class but that he did not want to go to defendant's office. Ms. Drolson then excused the student from her class in order to avoid the page. Shortly thereafter, the student was, in fact, paged. He reluctantly responded to the page.

At the end of the semester, defendant asked Ms. Drolson to change this student's grade from failing to a passing grade. Ms. Drolson changed the student's grade to a "D" after defendant told her that he would have the student turn in additional work. The student never turned in the promised work.

The school's senior counselor, Ms. Lois Woodworth, also testified as to defendant's relationship with this student. Ms. Woodworth reported seeing defendant and this student together as often as two or three times a week. She noted that there were also other male students who would frequent defendant's office. Defendant had asked her to take this student in for counseling, even though he was only a junior at the time. She stated that defendant's request was unusual, since she counseled those students who had entered their senior year in high school.

Mr. Thomas Riley, whose office was next to defendant's office, testified that he saw this student enter defendant's office through a side door on four or five occasions. He also observed two of the other accusing witnesses and several other students enter defendant's office regularly through this side door.

Charles Riggs, the school's engineer, testified that in March 1985, several months prior to defendant's indictment, he observed defend-

ant incinerate several stacks of papers. This incineration occurred on two separate occasions. Mr. Riggs noted that he had never seen defendant, prior to these incidents, incinerate anything. Usually a student brought items down for incineration or a janitor was called to incinerate anything to be disposed of at the request of members of the faculty.

At the close of the State's case, although the court denied defendant's motion for a directed verdict, it found defendant not guilty of the first count of the indictment filed by one of the accusing witnesses.

Defendant, in testimony, denied all allegations of sexual improprieties with any student from Kelvyn. He did admit to having a piece of wood placed over the grating of a door to his office and to having carpet installed. Defendant also conceded that he had burned a great number of documents and personal correspondence.

The court found defendant guilty at the conclusion of the evidence. A sentencing hearing was held and the court heard arguments in mitigation and aggravation. Defendant also spoke on his own behalf, again denying the allegations. The court then sentenced defendant to concurrent terms of 15 years for the indecent liberties charges and five years for the official misconduct charges. It is from this decision that defendant appeals.

Defendant first argues that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Defendant maintains that his conviction should be reversed since there was an utter absence of corroboration of the testimony of the accusing witnesses. Moreover, defendant argues, that the accusing witnesses' testimony was not clear and convincing. We disagree.

■ The standard to be used for reviewing the sufficiency of evidence in all criminal cases is proof beyond a reasonable doubt, whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291; *People v. Eyler* (1989), 133 Ill. 2d 173, 191; *People v. Phillips* (1989), 127 Ill. 2d 499, 509-10.) It is not the function of a court of review to retry the defendant. (*Phillips*, 127 Ill. 2d at 509.) It is the function of the trier of fact to determine the accused's guilt or innocence; a court of review will not reverse the conviction unless the evidence is so improbable as to justify a reasonable doubt of the defendant's guilt. *Phillips*, 127 Ill. 2d at 509-10.

■ We do not find that the evidence against defendant was so unreasonable or improbable as to warrant a reversal of his conviction. We, instead, find that the evidence is overwhelmingly against defendant. After carefully reviewing the record, we find that there was de-

tailed testimony from each of the five accusing witnesses that defendant had committed various acts of sexual improprieties. In each case, the accusing witness subjected himself or herself to defendant's sexual demands in exchange for promises of passing grades, protection of some sort, or special treatment. Furthermore, there was clear and concise testimony from other witnesses who had been subjected to defendant's deviant acts.

Although defendant impeached the testimony of some of these witnesses with respect to dates, times and other inconsistencies, the testimony was otherwise clear, specific, and detailed as to what sexual improprieties defendant had committed with each witness. As the State properly observed, not one of these witnesses wavered as to the material aspects of their sexual encounters with defendant.

Defendant also contends that the evidence against him was implausible because there was no immediate outcry by any of the students after the alleged incidents took place. However, in cases such as this, the lack of an outcry or a late complaint may be attributed to fear or embarrassment. *People v. Escobedo* (1986), 151 Ill. App. 3d 69, 82-83.

We note that defendant initially made the argument that one of the accusing witnesses had reached the age of majority prior to the time the indictment was handed down. However, defendant conceded in oral argument before this court that the witness' reaching the age of majority was irrelevant to the charges made against him.

Next, defendant argues that the evidence at trial was prejudicially at variance with the indictment and the bill of particulars. The State's bill of particulars sets forth the dates the alleged incidents took place with respect to each student. Defendant argues, however, that when the case came to trial each of the accusing witnesses was unable to identify the date or dates of the incidents. This, defendant charges, misled him in the preparation of his defense.

The State, on the other hand, maintains that no variance exists between the evidence presented at trial and the bill of particulars. The dates on the indictments are all listed as "on or about" or "during." The bill of particulars which was filed with the answer to discovery also listed the dates as "on or about." Moreover, the State argues, even assuming, *arguendo*, that such a variance existed, it was not fatal and had no effect upon the preparation of the defense. We, however, note that the State has conceded that the record is devoid of any evidence of fellatio occurring between defendant and one of the accusing witnesses on May 14, 1984. Therefore, we vacate defendant's convictions as to the official misconduct and indecent liberties

counts which are based on defendant's alleged act of fellatio on May 14, 1984.

 A minor variance between the testimony given at trial and the information provided in the bill of particulars does not rise to the level of reversible error unless the date is an essential element of the crime or where the inconsistency is so substantial that it misled defendant in the preparation of his defense. (*People v. Escobedo* (1986), 151 Ill. App. 3d 69, 84.) "The date of the crime is not an essential ingredient of the offense of indecent liberties with a child ***." *Escobedo*, 151 Ill. App. 3d at 85.

 Furthermore, after carefully reviewing the testimony, we find that either the witnesses approximated the dates or, in some instances, gave the exact date listed in the bill of particulars. As one of the accusing witnesses stated, in testimony: "I don't remember the exact date. I remember it happened."

Defendant's claim that the alleged variances misled him in the preparation of his case is also without merit. Defendant has steadfastly maintained that none of the alleged incidents occurred at any time. The dates would, therefore, arguably be inconsequential to his defense. In fact, prior to sentencing, with respect to an incident that allegedly occurred around Halloween, defendant stated: "I don't care if it was Halloween or the previous Friday or the previous Thursday, that is *** irrelevant to me. It didn't happen ***." Further, the dates listed in the bill of particulars gave defendant a sufficient time frame as to when the alleged incidents occurred. We are not persuaded that defendant was prejudiced in the preparation of his defense due to the claimed variances.

Defendant next argues that prejudicial prosecutorial and judicial misconduct deprived him of a fair trial. Specifically, defendant observed the son of the trier of fact, who is an assistant State's Attorney, in the courtroom conversing with the prosecutor, defense counsel, and his father. Defendant maintains that at the very least this gives the appearance of impropriety and, therefore, defendant's conviction must be reversed.

Defendant relies on Supreme Court Rule 67, which provides, in pertinent part, as follows:

"(a) A judge shall disqualify himself in any case in which a close relative by blood or marriage (first, second or third degree of relationship under the rules of the civil law, see Ill. Rev. Stat. 1975, ch. 3, par. 2—1(g)) is a party, has an interest, or appears as counsel. Disqualification is required where a lineal descendant or ascendant, brother, sister, uncle, aunt,

nephew, niece or spouse thereof is involved. A judge cannot rid himself of this responsibility by consent of counsel or the parties to the case.

(b) While a judge should disqualify himself in virtually all cases where a relative by blood or marriage is a party, has an interest, or appears as counsel, this may create an unnecessary hardship if the degree of relationship is remote. Although those relationships beyond the third degree are too remote to cause automatic disqualification, more distant relationships should be disclosed to the parties if they involve any possible conflict of interest." 87 Ill. 2d R. 67.

Defendant claims that the trier of fact's son, Frank Mahon, Jr., had an interest in this case. Defendant, however, does not articulate what particular interest the trier of fact's son may have in this case. Moreover, defendant did not raise this objection during trial which, arguably, waives the issue for review (but see *SCA Services, Inc. v. Morgan* (7th Cir. 1977), 557 F. 2d 110). As the State notes, defendant apparently only felt that he had been prejudiced after he was convicted. Even assuming, *arguendo*, that the issue was not waived, we are not persuaded that, under the circumstances of this case, the alleged communications would warrant a reversal.

▮ To establish that a right to an impartial trial was denied, the defendant has the burden of rebutting the presumption of impartiality by proving actual prejudice. (*People v. Anderson* (1981), 95 Ill. App. 3d 143, 147.) Defendant has not met his burden in this case. To warrant a reversal, the communication must rise to the level of unfairness or the probability of unfairness. (*People v. Hicks* (1970), 44 Ill. 2d 550, 557.) After carefully reviewing the record, we do not find that the alleged communications rise to that level.

Defendant cites to two instances of alleged misconduct. First, he argues that Frank Mahon, Jr., "assisted" the State in its case against defendant. The record, however, does not support this contention. We do not find any evidence whatsoever that Frank Mahon, Jr., assisted the State in this case. Second, defendant points out that Frank Mahon, Jr., had only recently been assigned, prior to trial, to the unit in the office of the State's Attorney office that was responsible for prosecuting him. However, Frank Mahon, Jr., was transferred to the arson unit. There is no connection between the crime of arson and the issues presented in the instant case.

The mere fact that Frank Mahon, Jr., is an assistant State's Attorney would not warrant the assertion that defendant was deprived of a fair trial. It is preposterous to assume that a judge's propensity

to convict criminal defendants would increase simply because his or her son or daughter is an assistant State's Attorney. See *State v. Logan* (1984), 236 Kan. 79, 689 P. 2d 778.

Next defendant argues that the trial court erred in allowing two of the State's witnesses to testify. One witness, an adult, testified to a sexual encounter she had had with defendant in his office. The other witness, who was present during that sexual encounter, corroborated the detail of the incident. Further, both witnesses' testimony was corroborated·by an accusing witness, who was also present during the encounter.

■■ Defendant contends that there was no crime committed since the female involved was a consenting adult, or, defendant argues, in the alternative, that this admission of other crimes resulted in prejudice against him and would warrant a reversal. Although evidence of other crimes is inadmissible to show defendant's propensity to commit a crime, it may be admissible if relevant to demonstrate intent, motive, design, plan or identification. *People v. Lindgren* (1980), 79 Ill. 2d 129, 137.

■■ In the instant case, the testimony evidenced a common plan or scheme by defendant of getting certain individuals into his office to commit various sexual acts. This same reasoning would apply to defendant's argument that no crime had been committed since the female was at the age of consent. Moreover, even if the testimony were erroneously admitted, if there is sufficient evidence to establish guilt beyond a reasonable doubt, the error will be considered harmless. (*People v. Hudson* (1980), 86 Ill. App. 3d 335, 341.) In the instant case, the evidence was overwhelmingly against defendant; we, therefore, do not find grounds for reversal based on this contention.

Finally, defendant argues that the trial court abused its discretion in sentencing him. He maintains that the trial court refused to give proper consideration to his personal background and rehabilitative potential and considered improper factors in imposing his sentence.

In *People v. Partin* (1987), 156 Ill. App. 3d 365, the appellate court set forth the following principles to be observed by a court of review in determining whether the trial court abused its discretion at the sentencing phase of the trial.

> "Although the Illinois Constitution requires the trial court to determine all penalties both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship (Ill. Const. 1970, art. I, sec. 11), a trial court is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. [Citation.]

There is a strong presumption that a trial court's sentencing decision is based upon proper legal reasoning, and the court will be presumed to have considered any evidence of mitigation which is before it. [Citation.] The court has no obligation to recite and give value to each fact presented at the sentencing hearing. [Citation.] The trial court is the proper forum in which to determine a suitable sentence, and the trial court's decision regarding sentencing is entitled to great deference and weight. [Citation.] [A] decision will be modified by a reviewing court only if there has been an abuse of discretion." *Partin*, 156 Ill. App. 3d at 373.

■■ After carefully reviewing the record, we do not find that the trial court abused its discretion in sentencing defendant. At the sentencing hearing, after witnesses and defendant testified and counsel presented arguments in mitigation and aggravation, the court stated:

"I want you to understand that I went through my notes piece by piece, I combed everything to see if there was anything I could find in your favor, and I couldn't. I gave you a degree beyond reasonable doubt, and I find you guilty. Therefore, I am going to sentence you at this time.

\* \* \*

I also wanted to advise you that I did not give you probation, although I did consider it, because it would be a deprecation of the seriousness of the crime. If I would give a person probation having found you guilty of the acts that I found you guilty of, it would also be necessary to protect the public from acts of a similar nature that might be made by you."

First, with respect to defendant's argument that the trial court failed to consider defendant's background and rehabilitative potential, we find nothing in the record that would indicate the court ignored these factors. A trial court need not give greater weight to the potential for rehabilitation than to the seriousness of the offense. (*People v. Partin* (1987), 156 Ill. App. 3d 365, 373.) Further, defense counsel's argument with respect to rehabilitation seems contradictory, since defendant steadfastly maintains that he did not commit any sexual offenses.

■■ Second, defendant's argument that the court improperly considered two factors in aggravation is simply unsubstantiated by the record. Specifically, defendant points to the court's remark, made prior to imposing sentence, that "we are living in a society that is obsessed with sexuality." However, as the State aptly points out, defendant takes this remark out of context. The remark was in re-

sponse to defendant's request for a new trial. The court immediately stated after making the remark that it carefully reviewed the record and had even taken personal notes during the trial to determine if anything could be found in defendant's favor. The court then went on to explain that defendant's plight had been considered beyond a reasonable doubt. There is simply nothing in the record to support defendant's argument that this remark was considered as a factor in aggravation.

Defendant argues that the trial court also took offense to and improperly considered a factor in aggravation, *i.e.*, his assertion that the trier of fact's son influenced the court's decision. Although the court may have taken offense to the assertion, there is nothing in the record to support defendant's contention that the court considered this as a factor in aggravation when it later imposed sentence. Defendant's argument fails with respect to this issue.

Accordingly, the decision of the circuit court is affirmed in part, and we vacate those counts consistent with our previous findings herein. As part of our judgment, we grant the State's request that defendant be assessed $75 as costs and fees for this appeal, pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, and *People v. Nicholls* (1978), 71 Ill. 2d 166.

Affirmed in part; vacated in part.

McMORROW, P.J., and JIGANTI, J., concur.