James G. MOFFAT, Petitioner–Appellant,

v.

Jerry GILMORE, Respondent–Appellee.

No. 95–4020.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1996.

Decided May 8, 1997.

As Amended on Denial of Rehearing
June 25, 1997.

Ronald Cope (argued), Ancel, Glink, Diamond, Cope & Bush, Chicago, IL, for Petitioner–Appellant.

Rita M. Novak, Office of the Attorney General, Chicago, IL, Steven J. Zick (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before POSNER, Chief Judge, and CUDAHY and DIANE P. WOOD, Circuit Judges.

CUDAHY, Circuit Judge.

The former principal of Chicago's Kelvin Park High School, James G. Moffat, was convicted in 1987 of eight counts of indecent liberties with a child and sixteen counts of

official misconduct. The Illinois trial court sentenced Moffat to fifteen years in prison. Moffat now comes before this court seeking a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied Moffat's petition. We affirm.

The Illinois trial judge communicated ex parte about Moffat's trial with the prosecution, or so Moffat alleges. We consider this claim in this opinion. Moffat also argues that the state failed to prove that the statute of limitations did not bar prosecution of Moffat's sex crimes. This latter question we decide in a companion order.

## I. The allegedly ex parte communication

Bitterness marked Moffat's highly publicized trial in the Circuit Court of Cook County, Criminal Division. After its conclusion, Moffat submitted motions for a new trial and for arrest of judgment to the trial judge, Judge Francis Mahon, Sr. Moffat argued the ordinary fare of insufficient evidence, prosecutorial misconduct and the like, but with an unusual addition. Moffat argued that Judge Mahon himself was prejudiced against him.

After the trial ended, Moffat claimed that he learned that Judge Mahon's son, Francis, Jr., was an assistant state's attorney—and that the judge's son had appeared in the courtroom several times during the trial. Moffat (then and since) has expressed his objections under a variety of legal rubrics, but common to all has been the thesis that the son's presence in the courtroom intimated an unfairness to Moffat.

Judge Mahon was incensed. "[T]his is an insult to the Court," he responded from the bench. As Judge Mahon's rather irregular handling of Moffat's claims is the heart of this case, we quote the core of his retort:

My son was here a few times. He was assigned to another courtroom and because of the publicity and the interest in this case, he did come down here. He did talk to Mr. Farrell [the prosecutor]. *I talked to him last night.* He said he talked to Mr. O'Gara [Moffat's defense counsel] more than he talked to Mr. Farrell. Mr. O'Gara was his superior until last year when [Mr. O'Gara] left the State's Attorney's office. Farrell was his

superior. So, he talked to both of them. There was nothing wrong with that, in my opinion.

(Emphasis added.)

Moffat also noted that soon before his trial, the State's Attorney's Office transferred the son from the Trial Division to the Special Prosecutions Bureau. This was the same bureau that was trying Moffat. Judge Mahon understood Moffat, "at least by innuendo, to mean that because my son was transferred to another division that that is the reason I found Mr. Moffat guilty." Judge Mahon did not take kindly to this allegation either. "What an insult, what an insult to a judge," he said. The allegation had nothing to it. His son, he explained, had moved to Arson, "one of the lower Special Prosecutions." Arson obviously was not the section trying Moffat. And this transfer was "a lateral move" from second chair in the Trial Division, not a promotion.

Judge Mahon then denied the motion for a new trial and the motion in arrest of judgment.

## II. State court proceedings

Moffat appealed his conviction on a number of grounds, including judicial misconduct that deprived him of a fair trial. On one issue, Moffat won: the Illinois Appellate Court vacated for lack of evidence certain convictions for acts Moffat allegedly committed on May 14, 1984. *People v. Moffat*, 202 Ill.App.3d 43, 54–55, 148 Ill.Dec. 50, 58, 560 N.E.2d 352, 360 (1990) (*Moffat I*). On the others, including the issue of judicial misconduct, Moffat lost. After stating that Moffat might have waived his judicial misconduct claim by failing to raise it during the trial, the Appellate Court ruled on the merits. *Moffat I* assessed only the communications that took place during the trial—the son's presence and his chats with the prosecution, defense and judge. Moffat would have to show that the contested communications had "rise[n] to the level of unfairness or the probability of unfairness." *Id.* 148 Ill.Dec. at 59, 560 N.E.2d at 361.

This Moffat could not show. The court held that Moffat had failed to prove that the

prosecutor son had any interest in his case. Nor did any evidence exist to show that the son had aided the case against Moffat in any way or that the son's transfer had any influence on the case. The Supreme Court of Illinois declined to hear Moffat's appeal.

Moffat then pressed his collateral attack in state court. He lost in the trial court and appealed. *People v. Moffat,* 265 Ill.App.3d 469, 201 Ill.Dec. 876, 637 N.E.2d 465 (1994) (*Moffat II*). *Moffat II* took up a legal issue that *Moffat I* had not addressed. *Moffat I* considered only the in-trial communications; *Moffat II* examined the evening conversation the trial judge had with his son (quoted above as "I talked to him [my son] last night."). This nighttime chat, Moffat contended, breached an Illinois Supreme Court rule barring ex parte communications.

On collateral attack, issues that Moffat raised or could have raised on direct appeal were res judicata. They could not be mined again. *Moffat II,* 201 Ill.Dec. at 878, 637 N.E.2d at 467. Moffat recast his argument in new garb, that of ineffective assistance of appellate counsel. His appellate counsel, Moffat claimed, had failed to raise the claims now barred as res judicata. That failure constituted ineffective assistance of counsel. The Appellate Court took up the framework of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Id.* (also citing *People v. Albanese,* 125 Ill.2d 100, 106, 125 Ill.Dec. 838, 531 N.E.2d 17 (1988)). To prevail under *Strickland,* a defendant must show, one, that her lawyer's performance was so dismal as to offend the Sixth Amendment, and two, that the dismal performance of the lawyer substantially prejudiced her.

Whether Moffat had suffered prejudice (prong two) depended on whether Moffat's argument had any merit. *Moffat II* said it did not. Moffat had presented no evidence that the trial judge and his son had discussed the merits of the pending motion during their nighttime talk. Moffat also had not shown that the nighttime talk had influenced the trial judge. Affirming its conclusions in *Moffat I,* plus these new conclusions, the Appellate Court rejected Moffat's claim. *Id.* 201 Ill.Dec. at 879, 637 N.E.2d at 468.

## III. On collateral attack in federal court

With his state remedies exhausted, Moffat filed a habeas petition in the Northern District of Illinois. *Moffat v. Gilmore,* 1995 WL 699624 (N.D.Ill.). Moffat continued the attack on the nighttime talk as an ex parte communication. The nighttime talk, he said, (1) denied him due process and (2) created an appearance of impropriety that requires reversal of his conviction. Moffat argued as well that (3) he never had a chance to inquire into whether the nighttime talk prejudiced him, and that (4) he therefore could not have waived the claims. We commingle the district court's denial of these claims with our own analysis below. We review the district court's findings of fact for clear error and its conclusions of law de novo. *Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir.1996).

A question remains about how best to assess Moffat's habeas petition. With passage of the Antiterrorism and Effective Death Penalty Act of 1996, Congress tightened the standards under 28 U.S.C. § 2254. Under pre–1996 law, we would take up afresh state courts' determinations of federal law (meaning both questions of federal law and of mixed law-and-fact). *Wright v. West,* 505 U.S. 277, 300–01, 112 S.Ct. 2482, 2494–95, 120 L.Ed.2d 225 (1992) (O'Connor, J., concurring in judgment) (citing *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). Under the new habeas statute, we ask whether the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (1997).

This circuit has held these amendments to be retroactive, but the Supreme Court has granted a writ of certiorari to examine this holding. *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996) (en banc), cert. granted, —— U.S. ——, 117 S.Ct. 726, 136 L.Ed.2d 643 (1997). In the interests of conserving judicial resources and of resolving Moffat's petition with finality, we employ both the old and new § 2254 standards. *Hennon v. Cooper,* 109

F.3d 330, 334 (7th Cir.1997). The results do not differ.

## A. Waiver

■■■ Two principles govern our consideration of Moffat's first claim that he was denied due process. First, a habeas petitioner's claim must be rooted in federal law. Section 2254(a) empowers the federal courts to review the judgments of state courts "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Second, a petitioner must have previously raised this ground in state court. Federal courts will not entertain a habeas petitioner's claim under § 2254 unless he has fairly presented his federal law claim to the state courts. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971).

■■■ The district court found that Moffat had failed to present a *federal* claim of due process on appeal and in the other state proceedings. We agree. Although he did raise the allegedly ex parte communication both on direct appeal and on collateral attack in the Illinois courts, he did so only in terms of canons of judicial ethics and of Illinois law, without significant mention of federal law. We find no mention of a federal due process claim in *Moffat I*, but that in itself tells little: *Moffat I* overlooked the entire topic of the trial judge's nighttime talk with his son, even though Moffat had explicitly addressed this allegedly ex parte communication. But Moffat's petition to the Illinois Supreme Court for leave to appeal *Moffat I* shows that, with regard to the nighttime talk, federal law did not figure in his direct appeal.

On collateral attack in the Illinois courts, Moffat again did not rely on federal law concerning the nighttime talk. In *Moffat II*, Moffat claimed ineffective assistance of counsel, a claim under federal law (*Strickland*). But this claim in turn he rooted in his counsel's failure to argue that the allegedly ex parte communication violated state law (the Illinois Supreme Court rules). The gravamen of his claim—*what* his appellate counsel had failed to argue—rested almost entirely on state law grounds. Neither *Moffat II* nor petitioner's own briefs on collateral attack in the Illinois courts betray any but the most perfunctory suggestion that federal law might forbid the allegedly ex parte communications. We also find no citation to federal law in the Illinois case to which Moffat repeatedly directs our attention. *People v. Bradshaw*, 171 Ill.App.3d 971, 121 Ill.Dec. 791, 525 N.E.2d 1098 (1988). While Moffat's federal ineffective assistance claim does survive, he has waived his federal due process claim.

## B. The due process claim considered

■■■ Even if we were to suppose that Moffat had not waived the due process argument, Moffat's claim would fail. We agree with *Moffat I* that, without a showing of something else—something possibly sinister—there is nothing suspicious about "the son of the trier of fact, who is an assistant State's Attorney, conversing with the prosecutor, defense counsel, and his father." *Moffat I*, 148 Ill.Dec. at 59, 560 N.E.2d at 361. True, the son, Francis Mahon, Jr., was a prosecutor, but that is a far cry from his necessarily being a party (as in *ex parte*). Assigned to the arson unit, the son had nothing to do with Moffat's prosecution. The son was visiting the sex crimes trial of a Chicago high school principal, formerly deputy head for all Chicago public schools. Media attention was intense. His father was the presiding judge. His ex-boss was the defense counsel. Under these circumstances, we find no hint that the courtroom to-and-fro of Francis, Jr. raises due process concerns. And where we find no such hint of a constitutional delict, it does not matter which § 2254 standard we employ, be it old or new.

The matter of the nighttime chat is less readily resolved. *Moffat II* ruled that "[n]o evidence suggests that during the conversation with his son, the trial judge spoke about the merits of defendant's pending post-trial motion," *Moffat II*, 201 Ill.Dec. at 879, 637 N.E.2d at 468, and the district court agreed. We cannot follow their appraisal. On our understanding of what "the merits" means, the trial judge did touch upon the merits with his son. We take *Moffat II* and the district court as suggesting that the trial judge did not ask his son how to rule on the

motion. We presume this to be true. But the merits of an issue should not be so narrowly defined. Moffat had challenged Francis, Jr.'s conduct and what it implied; Judge Mahon asked his son what his conduct had been. This impromptu inquiry into the validity of Moffat's claims necessarily enmeshed the merits of the pending motion. What else would have been the point of the nighttime chat? (Judge Plunkett recognized as much when he wrote that "the judge's initiative in speaking to his son concerning his activities in the courtroom was not the best way to go about this investigation.")

Yet we agree with the district court and with *Moffat II* that "nothing in the evidence suggests that the trial judge was somehow influenced by the *ex parte* communication." *Moffat II*, 201 Ill.Dec. at 879, 637 N.E.2d at 468. Moffat's motion for a new trial had alleged that Francis, Jr.'s presence revealed prosecutorial and even judicial misconduct. So Judge Mahon asked his son about it, and his son said he'd talked more to Moffat's own lawyer (and his former boss) than to the prosecution. Both the district court and *Moffat II* found no prejudice. An innocuous story, we concur, from what we know.

Moffat says this is circular reasoning. Of course these reviewing courts found no prejudice, because they had to rely solely on what the trial judge said from the bench. Moffat has a point here, at least in logic. Francis, Jr., was never put on the stand; nor was his father, who settled the matter by dismissing the motion. Moffat hence at no time examined either of the nighttime conversants.

■ Yet he never sought to. This omission is important, because we think it was the defense counsel's obligation to inquire further. This must be so, at least in the absence of a genuine reason to suspect that the trial judge was biased against the defendant. At oral argument before this court, Moffat's counsel was asked whether Moffat's trial attorney had made any effort to develop the facts of the nighttime talk, perhaps through an evidentiary hearing. The answer was no. But that should not matter, counsel said, for Moffat should not bear the burden of showing that the allegedly ex parte communications were to his prejudice.

We cannot agree. If not the defendant's burden, whose would it be? The prosecution's? Certainly not. The trial judge's? We think not as well. We do not suppose that the Constitution—and that must be the source of Moffat's argument, if he has one—requires the trial judge to investigate *sua sponte* and at length a challenge to his integrity. As a practical matter, such a requirement would make little sense. Suppose some evidence of judicial mischief did exist. Would a defense lawyer leave the investigation to the very judge tainted with suspicion? Surely the defense counsel would seek to take hold of the investigation herself.

We find no violation under either the pre- or post-amended § 2254. Even if Moffat had not waived his federal due process claim, we conclude under the old § 2254 standard that he had no viable claim to begin with. It follows that he fails under the more stringent standards of the 1996 amendments.

## C. Ineffectiveness of appellate counsel

Last, Moffat argues that his lawyer on direct appeal offered such poor counsel as to trigger the intercession of the U.S. Constitution. The specific error, Moffat says, was his lawyer's failure on direct appeal to argue that the nighttime ex parte communication violated Illinois Supreme Court Rule 63(a)(4), which prohibits a judge from initiating, permitting or considering ex parte communications. The Illinois courts have heard and rejected this claim. *Moffat II*, 201 Ill.Dec. at 878–79, 637 N.E.2d at 467–68.

■ Based on our understanding of the facts of his case, we think it unlikely that Moffat received ineffective assistance of counsel. We do not decide this question, however. No mention of this claim appears in the district court's decision, and for a good reason. Moffat never raised it in his habeas petition, nor in his other submissions to the district court. Moffat cannot cure this omission by reviving it before this court. *Smith*

*v. Farley,* 25 F.3d 1363, 1365 n. 2 (7th Cir. 1994).

AFFIRMED.