THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY SMITH, Defendant-Appellant.

First District (5th Division)   No. 1—87—2768

Opinion filed October 5, 1990.—Rehearing denied November 19, 1990.

154

Randolph N. Stone, Public Defender, of Chicago (Lynn R. Flanagan and Richard Gade, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, David R. Butzen, and Jannis Eisbart, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Larry Smith (Smith), appeals from a burglary conviction and sentence of four years. Smith was sentenced on August 3, 1987. He had served 83 days in the Cook County jail prior to his sentence. If Smith is still incarcerated, as of the date of the writing of this opinion, he will have served three years and 130 days of his four-year sentence.

Smith raises two issues on appeal: (1) that the trial judge erred in not allowing defense counsel to complete her closing argument; and (2) that he was not proved guilty beyond a reasonable doubt. For the reasons hereafter set forth, we reverse Smith's conviction.

The following facts appear from the trial record.

Police officer Jose Cartagena testified that about 5 a.m. on August 22, 1986, he and his partner, Officer Kofron, received a radio call concerning a possible theft from some railroad boxcars at 1341 South Talman in Chicago. When the officer arrived at that location he observed a four-foot hole in the chain link fence which surrounded a portion of railroad property. The officer crawled through the hole and walked up to some railroad tracks where he observed about 15 men taking boxes out of the car in "assembly line" fashion and stacking them on a nearby road. After observing the men for a few minutes, he approached the group and the men began to run.

Officer Cartagena returned to the squad car, called for assistance and then returned to the railroad tracks and began gathering boxes.

Officers Calderon and Jaques started walking up the embankment toward the tracks when Officer Cartagena heard Officer Jaques "holler for somebody to get up." As Officer Cartagena approached the two officers, he saw them pull defendant from some bushes. Officer Cartagena testified that he had observed defendant in the "assembly line," moving boxes from the railroad car and stacking them on the road. Defendant was arrested, and Officer Cartagena then returned to the railroad tracks and resumed picking up boxes.

Later, Officer Rodriguez approached Officer Cartagena and he then accompanied Officer Rodriguez to a squad car, where he saw codefendants, Anthony Weeks and Michael Triplett. Officer Cartagena then returned to the tracks, where he observed that about 10 of the boxes he had just gathered were missing. He and Officer Rodriguez started walking through nearby bushes in search of the boxes when they found codefendant Richard Washington hiding in the bushes with the missing boxes. The boxes were subsequently inventoried and claimed by a representative of the Chicago and Northwestern Railroad Company. Officer Cartagena testified that at the time he observed the "assembly line" the sky "was getting daylight," that there was one light on the opposite side of the railroad car and one light farther down from the car and that "light was coming over the boxcar and on to where all these people were." On cross-examination the officer stated that he first observed the line from a distance of 20 to 25 yards. He testified that as he started walking toward the group he turned on his flashlight, stating "I didn't want to trip over anything." The officer testified that when he called for assistance the only description he provided was that the offenders were approximately 15 black men who were about 16 to 20 years old. At one point, the officer testified that he did not see any of the faces when the boxes were being unloaded, but he later testified that at some point he saw the faces of some of the people in the assembly line and that some of those people he had identified in court. The officer provided in-court identifications of defendant and codefendants.

Officer Calderon testified that he found defendant "crouched down in the bushes" inside the fence and that Officer Cartagena identified defendant as one of the offenders. Officer Kofron testified that she first observed defendant as he was being brought down from an embankment that led up to the railroad tracks. At the conclusion of the State's case in chief, defense counsel requested a directed finding and argued extensively about defendant's identification by police. The motion was denied.

Thomas Carroll, a law clerk from the Cook County public de-

fender's office, then testified that about one year after the incident he examined the area where the burglary occurred and observed no lights on the railroad's property, but did see lights in an adjacent junkyard.

After only a single sentence of closing argument by defense counsel, the following colloquy took place between her and the court:

"MS. HERIGODT: Judge, if I may continue to argue.

THE COURT: Well, you can't.

MS. HERIGODT: It may present—It may be that he was present at the scene of the crime, Judge —

THE COURT: May very well be. And I find that he's part and parcel of this.

As long as arguments are not evidence, and anything you say should not be taken by me as evidence, I don't think I'm required to listen to your arguments. And especially when the evidence is so overwhelming as to prove beyond a reasonable doubt.

You [sic] trying to tell me that this man just incidentally happened to be on a railroad property and incidentally the very same time in fact a burglary is going on? I think that is ludicrous and I, you know, I support you for your adversary proceedings, but I think you're wasting my time and everyone else's time by attempting to argue that when in fact nothing that has been presented here has impeached anything that the officer said in any material way other than to say that it was kind of hard for me to identify everyone but that guy found immediately after this burglary close enough to that boxcar hiding corroborates that identification sufficiently enough for me to make my determination that there's not a chance in the world that I'm sending an innocent man or finding an innocent man guilty of the charge of that burglary.

And for those reasons I find your client, Larry Smith, guilty as charged in the Indictment."

■ Defendant first argues that the trial court improperly curtailed defense counsel's closing argument, thereby denying him the full benefit of his constitutional right to effective assistance of counsel. Defendant is correct. The cases of *Herring v. New York* (1975), 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550, *United States v. Spears* (7th Cir. 1982), 671 F.2d 991, and *People v. Diaz* (1971), 1 Ill. App. 3d 988, 275 N.E.2d 210, compel reversal. As the court stated in *People v. Diaz*:

"In a criminal case, our statutes and constitution contemplate

that the trial include an opportunity for the defendant to argue his cause by counsel." 1 Ill. App. 3d at 992.

■ We are aware of the fact that this cause originates in an area where the trial judge has a crowded docket, but that fact does not relieve a judge of his duty to be attentive, patient and impartial. A defendant who waives a jury and submits his or her rights and liberty to a trial judge is entitled to the same fair, patient and impartial consideration he would be entitled to by a jury of fair, impartial, careful and considerate peers. (*People v. Diaz*, 1 Ill. App. 3d 988, 275 N.E.2d 210.) In many a criminal trial and/or appeal, argument or brief of defense counsel or prosecutor has changed the initial impression of the court.

■ There appears to be adequate evidence to support the verdict of guilty in this case. Normally, we would merely reverse and remand the cause for a new trial. However, in light of the amount of time the defendant has already served under the sentence imposed, remandment for a new trial would be an exercise in judicial futility.

Accordingly, we reverse the defendant's conviction based on the constitutional defect occurring at his trial without remandment.

Reversed.

COCCIA, P.J., and GORDON, J., concur.