Third Division 

October 8, 2003 

No. 1-00-3672

THE PEOPLE OF THE STATE ) Appeal from the

OF ILLINOIS, ) Circuit Court of

) Cook County 

Plaintiff-Appellee ) 

)

v. ) No. 99 CR 9374 

) 

CECIL CRAWFORD       ) Honorable 

 ) Ronald A. Himel

Defendant-Appellant.   ) Judge Presiding.

JUSTICE HALL delivered the opinion of the court:

Following a bench trial, defendant Cecil D. Crawford, also known as Dowell, was found guilty of aggravated criminal sexual assault.  On October 12, 2000, he was sentenced to 18 years' imprisonment.  Defendant filed his timely notice of appeal on October 17, 2000.

On appeal, defendant contends that: (1) his constitutional right to effective assistance of counsel was violated by the trial court's repeated interruptions of defense counsel's closing argument; (2) the trial court's repeated interruptions of defense counsel's closing argument revealed that the court was biased against him so as to deny him a fair trial; (3) he was denied a fair trial by the trial judge's inaccurate memory regarding the examining doctor's testimony pertaining to a vaginal abrasion; (4) the trial court failed to conduct an adequate inquiry into his 
pro se
 posttrial allegation of ineffective assistance of counsel; and (5) his mittimus should be corrected.  Defendant also raises two issues regarding his sentence.

Based upon our decision as to defendant's second issue, we need not address the rest of the issues raised by defendant.  For the reasons that follow, we reverse and remand. 

FACTUAL BACKGROUND

I.R., the alleged victim, was 18 years old at the time of the incident; defendant was 55 years old.  I.R. testified that she had known defendant since she was a small child and that her aunt was married to defendant's brother.  I.R. testified that on the night of March 29, 1999, defendant picked her up from the apartment she shared with her mother, uncle and his wife and daughter, and she and defendant traveled to "Ricky's" apartment.  They arrived at the apartment at about midnight.  No one was in the apartment.  I.R. testified that defendant briefly left her in the apartment and went out to purchase some beers.  When defendant returned to the apartment, I.R. and defendant sat down to drink the beers and I.R. took out some marijuana to smoke.  At about 3 a.m., I.R. testified that she realized it was getting late, so she asked if she could call a cab.

I.R. testified that when she asked to call a cab defendant told her to take off her clothes.  She testified that when she refused the request, defendant grabbed her by the neck, pulled her into the bedroom and pulled her pants down.  I.R. testified that once her pants were pulled down, defendant inserted his penis into her vagina for a couple of minutes as she attempted to fight him off.  She testified that when she pulled back from defendant, he began choking her and threatening her life.

I.R. testified that defendant then told her to perform oral sex on him.  She testified that she complied because she was scared.  I.R. testified that defendant continued choking her until she jumped off the bed.  She then asked to use the bathroom.  She testified that she took a cigarette defendant offered her and went into the bathroom.  Once in the bathroom, I.R. began throwing objects out of the bathroom window in an attempt to get someone's attention.

I.R. testified that as she was exiting the bathroom, defendant walked in to use the bathroom.  She told defendant that she was going to call a cab.  She testified that defendant replied, "well, hurry up because I'm not through with you."  I.R. testified that instead of calling a cab, she called 911 and told the operator that she had just been raped and to send help.  She testified that she hung up the phone when she thought she heard defendant leaving the bathroom.  She then dialed a random telephone number so that defendant could not press redial and discover that she had called the police.

I.R. testified that she unlocked the front door to the apartment while defendant was still in the bathroom.  When defendant exited the bathroom, he told her to "come on."  She testified that she told defendant to wait because she needed some air since he had choked her.  She then stood by the window.  I.R. testified then when she saw the police arrive, she called out the window for help.  She testified that when defendant discovered that she was calling for help, he grabbed her by the neck and threatened to kill her.  I.R. testified that the police soon arrived in the apartment and took defendant into custody.  She was transported to St. Mary's Hospital for examination.

Detective Terrence Hart testified that he arrived at the scene after responding to a radio call and saw I.R. at a second-floor window yelling for help.  As the detective ascended the stairs toward the second floor, he heard a woman scream, and then the scream abruptly stopped.

Detective Hart testified that when he entered the apartment he saw defendant choking I.R.  The detective pulled his service revolver, pointed it at defendant, and ordered defendant to take his hands off of I.R.  Defendant complied.  I.R. then ran to the detective, gasping and crying.  She told Detective Hart that she had been raped by the defendant.  Defendant was arrested and taken into custody.  The detective testified that he observed redness or bruising near I.R.'s eye and redness and scrapes around her neck.

Doctor Jose Yanong testified that on March 30, 1999, at approximately 4 a.m., he examined I.R. at St. Mary's Hospital's emergency room.  The doctor testified that I.R. had bruising on her face.  The doctor testified that he performed a pelvic examination on I.R. which revealed redness and a small abrasion on the labia or lips of her vagina.  He testified that his diagnosis was alleged sexual assault.

On cross-examination, Dr. Yanong testified that there were many causes for redness and abrasion in a woman's vaginal area, some of which do not involve any type of sexual penetration or conduct.  The doctor also confirmed that his diagnosis was alleged sexual assault rather than sexual assault.

Dino Lucchesi and Charles Crawford testified on defendant's behalf.  Lucchesi testified that he had known defendant for about 20 years and had known I.R. all of her life.  Lucchesi owned a neighborhood bar called Dino's Tap Bar.  Defendant had worked at the bar.  Lucchesi testified that I.R. frequently called the bar asking to speak to defendant.

Charles Crawford, defendant's brother, testified that he had known I.R. all of her life.  He testified that two or three months before the incident occurred, he had seen defendant and I.R. together on two occasions.  On one occasion, he went to the apartment I.R. shared with her mother and saw I.R. and defendant lying in bed together watching television.  On the second occasion, he saw I.R. and defendant together outside Dino's bar.

Defendant testified on his own behalf.  He testified that prior to the incident, he and I.R. had been dating for two or three months and had lived together in I.R.'s aunt's apartment. Defendant testified that on the afternoon preceding the incident, I.R. called him at Dino's bar asking to borrow $40.  Defendant traveled to I.R.'s uncle's home, gave I.R. the money she requested and left.  Defendant testified that about 4:30 p.m., I.R. paged him asking to be picked up from a pizza parlor.

Defendant testified that he picked up I.R. along with her grandmother and her aunt's two children and drove them all to the aunt's house.  He testified that later that evening at about 10 p.m., he took a cab to I.R.'s apartment and afterwards they left together and took a cab to the apartment where the incident occurred.  Defendant used a cab because he did not have access to the vehicle he had driven earlier that day.  He and I.R. arrived at the apartment at about 1:30 a.m.  Defendant testified that I.R. was planning to spend the week with him at the apartment.

Defendant testified that when he and I.R. arrived at the apartment she asked him to go to the liquor store to purchase some liquor.  He responded that the liquor store was closed, but remembered that his downstairs neighbor had some beer.  Defendant testified that after he returned to the apartment with the beer, I.R. asked him to catch a cab with her to go over to the "drug spot" to obtain some drugs.  Defendant testified that after he refused I.R.'s request, they both sat down and drank the beer and afterwards went to bed.

Defendant testified that shortly after they went to bed, I.R. again requested that they catch a cab together and go to the "drug spot."  When defendant again refused, I.R. got angry and told defendant that she wanted to go back to her mother's house.  Defendant testified that he told I.R. to go and catch a cab.  According to defendant, I.R. responded that he should go with her.  Defendant testified that when he refused, I.R. got out of the bed and left the bedroom.  Defendant testified that he thought that I.R. had left to call a cab.

Defendant testified that he got out of the bed and went into the dining room to give I.R. money for a cab and saw that she was talking out the window to someone.  He testified that when he walked up behind I.R. and asked her who she talking to, she turned around and slapped him.  He testified that he when attempted to grab I.R. by her arms to keep her from slapping him again, a detective came through the apartment's front door with his revolver drawn.  The detective pointed the revolver at defendant and ordered him to put his hands on the dining room table.  Defendant testified that he did not force I.R. to place her mouth on his penis or to engage in intercourse.

On cross-examination, defendant testified that before the incident occurred, I.R. drank beer but did not smoke marijuana in the apartment.  He testified that I.R. had smoked crack cocaine at her mother's apartment just before going with him to the apartment where the incident occurred.

Detective Hart testified in rebuttal for the State.  He testified that he had three separate conversations with defendant at police headquarters.  The detective testified that during one conversation, the defendant stated that he had informed I.R.'s family that she was staying at the apartment with him, but that he had never discussed this with I.R.  The detective also testified that defendant stated that he had never actually seen I.R. in possession of illegal drugs or that she was high on drugs prior to accompanying him to the apartment.  Regarding the incident, the detective testified that defendant stated that he got angry with I.R. when he saw her yelling out of the window.

On cross-examination, Detective Hart conceded that although defendant stated that he had never actually seen I.R. in possession of drugs, defendant did state that he had given her money to purchase cocaine.  The detective acknowledged that on the date of the incident, he never asked I.R. if she had taken any illegal narcotics.  He also acknowledged that defendant stated that he and I.R. had engaged in sexual relations on previous occasions, but on the night of the incident, their sexual activity was limited to "kissing different parts."

ANALYSIS

The sole issue addressed in this appeal is defendant's second issue wherein he contends that the trial court's repeated interruptions of defense counsel's closing argument revealed that the court was biased against him so as to deny him a fair trial.  We agree with defendant.

As a preliminary matter, we find that defendant did not waive his right to assert this issue on appeal by failing to object at trial, since the application of the waiver rule is relaxed when the trial judge's conduct would have been the basis of the objection. See 
People v. Westfield
, 207 Ill. App. 3d 772, 778, 566 N.E.2d 392 (1990) (stating that the waiver rule is relaxed when the trial judge's conduct is the basis of the objection because of the fundamental importance of a fair trial and the practical difficulties in objecting to the conduct of the trial judge); 
People v. Rowjee
, 308 Ill. App. 3d 179, 185, 719 N.E.2d 255 (1999) (same); 
People v. Primm
, 319 Ill. App. 3d 411, 425, 745 N.E.2d 13 (2000) (same).

Regarding the substantive arguments pertaining to defendant's claim, the State makes three principal contentions.  First, the State contends that defendant cannot complain that he was prejudiced by defense counsel's failure to complete closing argument because this was a bench trial and evidence of defendant's guilt was overwhelming and therefore the trial court had the discretion to refuse to hear defense counsel's closing argument altogether.  Second, the State contends that the trial court did not improperly curtail defense counsel's closing argument but rather interrupted defense counsel only to clarify the argument and to prevent misrepresentation of the evidence.  Third and finally, the State contends that the trial court did not prejudge the merits of the case or show bias toward defendant because the trial court's comments were made during closing argument and not during the taking of testimony.  We must reject each of the State's contentions.

First, the United States Supreme Court and this court have determined that even in a bench trial, a trial court does not have the discretion to deny a defendant the right to make a proper closing argument. 
Herring v. New York
, 422 U.S. 853, 856-65, 45 L. Ed. 2d 593, 597-602, 95 S. Ct. 2550, 2552-57 (1975); 
People v. Smith
, 205 Ill. App. 153, 156-57, 562 N.E.2d 553 (1990); 
People v. Heiman
, 286 Ill. App. 3d 102, 112, 675 N.E.2d 200 (1996).  This right is rooted in the sixth amendment right to counsel. 
Herring
, 422 U.S. at 856-57, 45 L. Ed. 2d at 597, 95 S. Ct. at 2552-53.  Therefore, in the present case, defendant was entitled to an opportunity to make a proper closing argument even if he elected to have a bench trial.

The State next contends that the trial court did not improperly curtail defense counsel's closing argument but rather interrupted defense counsel to clarify the argument and to prevent misrepresentation of the evidence.  The record does not support the State's assertions.  The record does not show that the trial court attempted to assist defense counsel in refining his argument.  Rather, the record demonstrates that the trial court repeatedly interrupted defense counsel each time counsel spoke and that the court expressed a belief that defense counsel was misrepresenting the evidence.  The record shows the following exchange between the trial judge and defense counsel during defense counsel's closing argument: 

"[Defense counsel]: Judge, you heard a substantial amount of testimony in this case, beginning with a doctor who testified that he saw no type of trauma of any sort to her vaginal area; that the injuries that he saw were to her--bruises on her face, some redness and some abrasions, which she testified could be indicative of both nonconsensual sex, as well as consensual sex, and he had other explanations that had nothing to do with sex for those particular findings.  He had a finding of alleged sexual assault.

THE COURT: You mean to tell me that you'd want the doctor to testify that what they saw was not an alleged sexual assault but a sexual assault?  You think because the doctor used the word 'alleged,' that helps you?

[Defense counsel]: Yes, I do.  Obviously, you don't, but I do.

THE COURT: Go ahead.  I mean, the facts are the facts.  The person wasn't there.  What she [he] observed was consistent with sexual assault.

[Defense counsel]: And she [he] also testified it was not with--not sexual assault.

THE COURT: But there is redness and abrasions, you will admit to that?

[Defense counsel]: Of course, Judge.           

THE COURT: Go ahead.

[Defense counsel]: Thank you, Judge.  Thank you.  You have heard testimony from the young lady that she--she states that she arrives there at approximately midnight, her testimony.  From Ms. Maldonado, that they arrived there at approximately 1:00 in the morning.  You heard testimony from this young lady, she had never had any real contact with my client alone, never made phone calls.  You heard testimony from the owner of the bar, yes, there have been numerous phone calls.

Judge, what we have here is not what the young lady would have you to believe, that this was a situation where my client is just attacking her.  We have a young lady going over there to get high, to have beer, to get--to have marijuana.

THE COURT: So it's okay.  Then it's okay.  If she's--if she's some trollop that's going around smoking crack or weed or drinking beer, and she's not old enough, she has no right to say no.

[Defense counsel]: I'm saying she didn't say no because nothing occurred, Judge.

THE COURT: Oh.

[Defense counsel]: I know your Honor, please–     

THE COURT: When the police are called and the person is choking the lady, and she's screaming 'I have just been raped,' and now you are telling me it had never happened, it never happened, the expectations of a man in pursuit never happened; right?

[Defense counsel]: That is our allegation, Judge, yes.  Made [may] I continue?

THE COURT: I would hope so.    

[Defense counsel]: Thank you Judge.  As I stated, Judge, you have got no physical corroboration of these actions.

THE COURT: No physical corroboration.  Why would you say something like that?

[Defense counsel]: Because I'm a Public Defender.  I am not a State's Attorney.

THE COURT: So you are Public Defender and you are not a State's Attorney, so you misrepresent the evidence? 

[Defense counsel]: I have a job to do.

THE COURT: Don't misrepresent the evidence.  Talk about the theory of Defense and not say there is no corroboration.  We have pictures.  We have doctor's testimony, and you are saying there's no corroboration.

[Defense counsel]: Yes, I am Judge.  Whether you like me saying it or not, I am saying it.  That is my job.  I will do my job.

THE COURT: That is not your job, to lie about the       evidence.

[Defense counsel]: I am not lying.

THE COURT: What are you saying?  You are misrepresenting the argument.  You are arguing circumstances.

[Defense counsel]: That's what I am trying to do, if you would let me.

THE COURT: You can't say there's nothing to corroborate when the physical evidence in the case does corroborate the theory.

[Defense counsel]: In your opinion, yes, it does. 

THE COURT: You have the police officer's testimony that he saw him choke the woman.  You have the doctor's testimony that he observed the bruises and abrasions, which are consistent with what the observations are, immediate outcry of rape.

[Defense counsel]: We have no further argument.  We will be asking for a finding of not guilty."

The exchange between the trial judge and defense counsel clearly shows that the trial judge improperly curtailed defense counsel's closing argument.  The trial judge repeatedly interrupted defense counsel, argued with counsel, challenging him at every turn and even characterized defense counsel's argument as a misrepresentation of the evidence.

In general, wide latitude is afforded counsel in closing argument. 
People v. Carter
, 177 Ill. App. 3d 593, 601, 532 N.E.2d 531 (1988).  Argument and statements that are based upon the facts in evidence, or upon reasonable inferences drawn therefrom, are within the scope of proper closing argument. 
People v. Brown
, 275 Ill. App. 3d 1105, 1114, 657 N.E.2d 642 (1995); 
People v. Simmons
, 331 Ill. App. 3d 416, 421, 770 N.E.2d 1271 (2002).  In light of the inconsistencies between I.R.'s and defendant's testimony, defense counsel's argument that the physical evidence did not necessarily corroborate the charge of aggravated criminal sexual assault was a permissible inference from the evidence rather than a misrepresentation of the evidence. See 
People v. McInnis
, 88 Ill. App. 3d 555, 574-75, 411 N.E.2d 26 (1980)  (concluding that defendant's contention that different and reasonable inference may be drawn from the same evidence did not make inference which the State chose to argue improper or impossible).

In a criminal case, the trial must include an opportunity for the defense counsel to argue the defendant's cause. 
Heiman
, 286 Ill. App. 3d at 112; 
Smith
, 205 Ill. App. 3d at 156-57.  It is not uncommon for a trial court to change its initial impression following argument by defense counsel or the prosecutor.
 Heiman
, 286 Ill. App. 3d at 112; 
Smith
, 205 Ill. App. 3d at 157.  Even though closing argument is not evidence, a trial judge has an obligation to be attentive, patient and impartial. 
Heiman
, 286 Ill. App. 3d at 112.  Here, the record indicates that the trial judge was neither patient nor impartial.

When a defendant in a criminal case waives trial by jury and submits his rights and liberty to a trial judge, that judge is in the identical position of a jury and all recognized rules for protection of the defendant's rights apply with equal force. 
People v. Rivers
, 410 Ill. 410, 419, 102 N.E.2d 303 (1951); 
People v. Diaz
, 1 Ill. App. 3d 988, 993, 275 N.E.2d 210 (1971); 
People v. McDaniels
, 144 Ill. App. 3d 459, 462, 494 N.E.2d 1275 (1986); 
People v. Phuong
, 287 Ill. App. 3d 988, 993, 679 N.E.2d 425 (1997).  The trial judge's comments and repeated interruptions of defense counsel's closing argument reveal that the court was biased against defendant so as to deny him a fair trial.

The State maintains that 
Heiman
 and 
Smith
 are inapplicable because in 
Heiman
 defense counsel's closing argument was interrupted 45 times and the trial judge made various derogatory and sarcastic remarks and in 
Smith
 the trial judge interrupted defense counsel's closing argument after defense counsel had only uttered one sentence.  Even though 
Heiman
 and 
Smith
 are factually dissimilar, the same principle that was applied in these cases regarding a trial judge's conduct during closing argument applies in the present case. See 
Heiman
, 286 Ill. App. 3d at 112-13 (concluding that even though the facts in 
Smith
 were dissimilar to those in 
Heiman
, in that defense counsel in 
Smith
 was not allowed to argue more than one sentence, the same principle applied in both cases where the trial judge in 
Heiman
 repeatedly interrupted and argued with defense counsel).

Moreover, the interruptions and comments the trial judge made in the instant case are qualitatively similar to the comments the trial judges made in 
Heiman
 and 
Smith
.  For example, in the instant case, the record shows that the trial judge interrupted defense counsel after just the first two sentences of closing argument.  The trial judge commented that just because the examining doctor used the word "alleged" in relation to the sexual assault charge, this did not help defendant.  Thereafter, defense counsel got out only four sentences of argument before the trial judge again interrupted, commenting: "So it's okay.  Then it's okay.  If she's--if she's some trollop that's going around smoking crack or weed or drinking beer, and she's not old enough, she has no right to say no."  After a second exchange, defense counsel moved to another point of argument.  The trial judge again interrupted for a third time accusing defense counsel of misrepresenting the evidence.  Thus, most of defense counsel's closing argument was interrupted.

The State also contends that the trial judge's comments made during defense counsel's opening argument did not demonstrate that the court was biased toward defendant because the comments were made to clarify the charge of aggravated criminal sexual assault.  Again, we must reject the State's contention.

In his opening statement, defense counsel stated that the evidence would not show a sexual assault but, rather, a fight between defendant and I.R.  An opening statement may include a discussion of the evidence and matters that may reasonably be inferred from the evidence. 
People v. Warmack
, 83 Ill. 2d 112, 126, 413 N.E.2d 1254 (1980).  However, before defense counsel could finish completing his opening statement, the trial judge interrupted stating, "[w]ell, wait a second.  He's not charged with fighting but the allegations are that he forcibly had a relationship with this young lady and the police observed this fight but you're saying that doesn't corroborate the allegations?"  The trial judge's comment suggests that the court had prejudged the merits of defendant's case before defense counsel presented any evidence regarding his theory of the case.

Here, the trial judge expressed opposition to defense counsel's argument that the fighting did not corroborate the allegations of aggravated criminal sexual assault before counsel presented any evidence on the issue.

Contrary to the States' assertion, the trial judge's comment does not indicate that the court was attempting to clarify the charge of aggravated criminal sexual assault.  Rather, the trial judge's comment was more in the form of a rebuttal and expression of the court's opposition to defense counsel's argument that the fighting did not corroborate the allegations of the charge.  This is readily apparent when the comment is compared with similar comments the trial judge eventually makes during defense counsel's closing argument.

The trial judge's comments made during defense counsel's closing argument further demonstrated the court's bias toward defendant.  For example, during defense counsel's closing argument counsel argued that the small abrasion and redness observed during I.R.'s vaginal examination could have been caused by consensual as well as nonconsensual sexual intercourse and that therefore this physical evidence did not necessarily corroborate the allegations of aggravated criminal sexual assault.  The trial judge interrupted and stated that what the doctor observed was consistent with sexual assault.  When defense counsel attempted to interject that the medical findings were also consistent with consensual sexual conduct the trial judge again interrupted and commented, "[b]ut there is redness and abrasions, you will admit to that?"

When defense counsel attempted to discuss the prior relationship between I.R. and defendant and argued that on the date of the incident I.R. willingly accompanied defendant to the apartment to drink beer and use illegal drugs, the trial judge again interrupted defense counsel stating, "[s]o it's okay.  Then it's okay.  If she's--if she's some trollop that's going around smoking crack or weed or drinking beer, and she's not old enough, she has no right to say no."  Defense counsel responded by arguing that I.R. did not say "no" because nothing occurred.  The trial judge stated, "oh," but then followed this up by stating, "[w]hen the police are called and the person is choking the lady, and she's screaming 'I have just been raped,' and now you are telling me it had never happened, it never happened, the expectations of a man in pursuit never happened; right?"  Finally, when defense counsel attempted to argue that there was no physical corroboration of an aggravated criminal sexual assault, the trial judge accused defense counsel of misrepresenting the evidence.

The trial judge's comments made during defense counsel's opening and closing arguments clearly reveal the court's bias against defendant.  The State contends that the trial court's comments do not show that the trial court was biased against defendant because the comments were not made during the presentation of any evidence.  Again we must reject the State's contention.  In 
Heiman
, we determined that the law requires a trial court to remain impartial until the close of trial, which included closing arguments, since it is not uncommon for a trial court to change its initial impression following closing argument. 
Heiman
, 286 Ill. App. 3d at 112.  The right to closing argument would be virtually meaningless if we were to find it appropriate for a trial court to make comments evaluating the evidence and otherwise showing bias toward a defendant -- prior to the end of closing argument.

Accordingly, for the reasons set forth above, because there was sufficient evidence in the record to support defendant's conviction (
People v. Taylor
, 76 Ill. 2d 289, 309-10, 391 N.E.2d 366 (1979)), defendant's conviction is reversed and the cause is remanded to the circuit court of Cook County for a new trial.

Reversed and remanded.

HOFFMAN, P.J., and SOUTH, J., concur.