2020 IL App (1st) 180202-U

No. 1-18-0202

Order filed September 17, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 2379 |
| | ) | |
| JOHNNY ZOLICOFFER, | ) | Honorable |
| | ) | William H. Hooks, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HALL delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's conviction for possession of cannabis with intent to deliver is affirmed over his contentions that the trial court's questions during closing argument deprived him of the right to present a closing argument and demonstrated that the court prejudged his guilt.

¶ 2   Following a bench trial, defendant Johnny Zolicoffer was found guilty of possession with intent to deliver more than 500 but less than 2000 grams of cannabis (720 ILCS 550/5(e) (West 2012)) and sentenced to three years in prison. On appeal, he contends that the trial court's repeated

interruptions of, and "quarrel[s]" with, trial counsel during closing argument deprived him of his right to present a closing argument and demonstrated the court prejudged the merits of the case. We affirm.

¶ 3    At trial, Chicago police sergeant Frank Ramaglia testified that around 6:51 p.m. on January 8, 2014, he was part of a team executing a search warrant at a residence on West Gladys Avenue. The subject of the warrant was Lonzeial "Zello" Jenson. As Ramaglia entered the first floor of the two-flat, he observed someone run downstairs into the basement. At trial, Ramaglia identified defendant as this person. Ramaglia and Officer Kathleen McGann followed defendant.

¶ 4    When Ramaglia entered the basement, he did not see defendant, but observed "large amounts" of cannabis, packaging material, and money on a counter. He searched the basement, found defendant in a bathroom, and arrested him. As Ramaglia walked defendant past the cannabis and out of the basement, defendant stated that "it did not belong to him, but he was holding it for Zello." The search of the basement recovered a gym bag containing three large bags of suspect cannabis, more than $9000, scales, and empty Ziploc and sandwich bags. Defendant was taken to a police station and advised of the *Miranda* warnings. Defendant denied that the money was his and made no statements about the cannabis. He later admitted that the money belonged to him.

¶ 5    During cross-examination, Ramaglia testified that several people, including Zello, were in the residence and three were arrested. Ramaglia did not see defendant touch the cannabis and no cannabis was recovered from defendant, although some cannabis was also found on the first floor. During redirect, Ramaglia testified that he did not see anyone else in the basement.

¶ 6 Officer Kathleen McCann testified consistently with Ramaglia that defendant ran downstairs, and that the basement contained a gym bag filled with cannabis, scales, a bag filled with money and cannabis bags, and "narcotics packaging."

¶ 7 Officer David Parker testified that he inventoried the cannabis. The State entered a stipulation that a forensic chemist would testify that plant material recovered from the residence tested positive for cannabis and had a total estimated weight of 1306.3 grams.

¶ 8 After the State rested, trial counsel moved for a directed finding and argued that defendant was initially seen on the first floor and no one saw him "do anything" with the cannabis in the basement. The court asked whether the testimony was that defendant was first seen on the ground floor and then went to the basement. Counsel agreed that it was, but argued that the officers did not know whether defendant did "anything" with the cannabis. The court replied, "other than being in the basement with [it]."

¶ 9 Counsel responded that being in a basement with cannabis was not a crime, the subject of the warrant was arrested, and defendant was merely present in the residence. According to counsel, the "only thing" connecting defendant to the contraband was a statement that no one with "more than *** a single digit IQ" would make. The court asked whether one could "just ignore" defendant's statement that he was "holding" the cannabis, and noted that "hold" expressed a "possessory interest." Counsel replied that there had to be a "physical element," and it was doubtful anyone would make the statement at issue. The court asked whether counsel was "suggesting the officer's testimony was false," and counsel answered affirmatively.

¶ 10 The State responded that the testimony established that defendant ran to the basement and was the only person there. The trial court replied that the defense theory was that defendant did

not know what was in the basement. The State responded that the condition in which the cannabis was found negated that theory and defendant later admitted the money recovered was his. The trial court denied the motion, and the defense rested.

¶ 11    In closing argument, the State argued that defendant's statement to Ramaglia proved that defendant possessed the cannabis. The court noted that the defense argued it was "unlikely" that defendant made such a statement and asked the State to "respond." The State replied that it could not speak as to what defendant would say in "that situation," but Ramaglia testified that defendant made that statement.

¶ 12    The defense then argued that people "scattered" throughout the residence when the officers arrived, and if another person had run to the basement, that person would be in court rather than defendant. The trial court asked why defendant ran to the basement when officers entered the residence, and counsel replied that defendant was scared. The trial court asked why defendant would be scared and if it related to the cannabis. Trial counsel responded that defendant might not have known that the people entering the residence were officers because he would not go to a place he could not "get out of" had he been trying to flee the police.

¶ 13    The court posited that defendant ran to the basement because "other stuff *** need[ed] to be taken care of" and "[y]ou can't flush down marijuana." Counsel replied that defendant would not run to the basement if he knew that marijuana was there; rather, he would have run upstairs. The court then asked why, once defendant saw the marijuana, he did not run back upstairs, and counsel replied that people do "strange things" when scared. The court asked whether there was any testimony that the officers entered the residence with masks, automatic weapons, or rifles, and counsel responded that it was "reasonable to believe" that the police entered in a "very tumultuous

manner." Counsel further argued the only evidence of misconduct was defendant's statement, he could not have known what was on the counter as officers walked him past, and he did not sign a written statement about what he "was doing for Zello."

¶ 14 The court then asked why defendant would be in a house "with that amount of narcotics on the table." Counsel responded that there was no testimony about where on the first floor narcotics were recovered, and the court responded "Okay." Counsel also submitted the evidence did not show whether defendant saw the narcotics in the basement. The court asked whether trial counsel's argument was that the testimony about defendant's statement was incredible and counsel replied that it was "a fair argument to make." The court replied "Okay." Counsel concluded that irrespective of what "holding" contraband means, the statement was not proof beyond a reasonable doubt of defendant's guilt when the owner of the narcotics was present, and defendant did not commit a physical act.

¶ 15 In rebuttal, the State argued that possession can be constructive, Ramaglia's testimony was not impeached, and "he testified today as to that same thing." The court then clarified that the officers, not defendant, testified, and the State agreed. The State also argued that defendant knew about the cannabis in the basement and admitted ownership of the money recovered.

¶ 16 In finding defendant guilty of possession with intent to deliver, the court summarized the defense theory as: (1) defendant was in the wrong place at the wrong time; (2) Ramaglia's testimony was incredible because defendant would not say he was "holding" contraband for Zello; and (3) even if defendant made the statement, it did not "equate" to possession. The court found the officers to be credible and interpreted defendant's statement as an attempt to exhibit "less

culpability." In other words, defendant "thought it would be exculpatory by simply saying [the cannabis] was someone else's."

¶ 17    Defendant filed a motion for a new trial, which the trial court denied. He then filed a motion to reconsider, which was also denied. Following a hearing, the court sentenced defendant to three years in prison. Defendant did not file a motion to reconsider sentence.

¶ 18    On appeal, defendant contends that the trial court denied him a fair trial when it "repeatedly" interrupted trial counsel during closing argument and "quarreled" with counsel regarding the evidence. He further argues that these actions demonstrated the trial court's prejudgment of the case.

¶ 19    Defendant acknowledges that he forfeited these issues by failing to raise them at trial and in a posttrial motion, but asks this court to review them pursuant to the plain error doctrine. The plain error doctrine permits a reviewing court to address a forfeited claim where a "clear or obvious error occurred" and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 18. The first step in plain error review is to determine whether error occurred (*People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)), because absent reversible error there can be no plain error (*People v. Williams*, 193 Ill. 2d 306, 349 (2000)).

¶ 20    Defendant first contends that he was "essentially" denied his right to make a closing argument when the court interrupted trial counsel, "interject[ed] its own theories," and mocked trial counsel's argument. The State responds that during closing argument the trial court asked

"tough questions" of both the State and the defense in order to give each party the chance to "address apparent weaknesses" in their arguments.

¶ 21    The sixth amendment of the United State Constitution guarantees every defendant the right to make a closing argument, whether he elects a jury or a bench trial, no matter how "simple, clear, unimpeached, and conclusive the evidence may seem." (Internal quotation marks omitted.) *Herring v. New York*, 422 U.S. 853, 856-57, 859-60 (1975). Illinois courts have concluded that " '[i]n a criminal case, our statutes and constitution contemplate that the trial include an opportunity for the defendant to argue his cause by counsel.' " *People v. Smith*, 205 Ill. App. 3d 153, 156-57 (1990) (quoting *People v. Diaz*, 1 Ill. App. 3d 988, 992 (1971)). "A defendant who waives a jury and submits his or her rights and liberty to a trial judge is entitled to the same fair, patient and impartial consideration he would be entitled to by a jury of fair, impartial, careful and considerate peers." *Id.* at 157. The standard of review when determining whether a defendant's constitutional rights were violated is *de novo. People v. Burns*, 209 Ill. 2d 551, 560 (2004).

¶ 22    Here, the record does not show that the trial court denied defendant the right to present a closing argument. In the case at bar, trial counsel fully argued the defense's theory that defendant was merely present at the residence, did not know about the cannabis, and ran downstairs because he was scared. Counsel attacked the credibility of the State's witnesses by arguing that no one would make the statement attributed to defendant. Trial counsel finished his argument by concluding that the State had not proven defendant guilty beyond a reasonable doubt and asked the trial court to find defendant not guilty. Although defendant is correct that the trial court asked numerous questions of trial counsel during closing argument, these questions sought to clarify the defense's theory of the case. Trial counsel was not given a time limit nor pressured to finish.

Moreover, the trial court asked questions of the State during its closing argument and rebuttal, including asking the State to respond to points argued by the defense in its argument.

¶ 23    We are unpersuaded by defendant's reliance on *People v. Smith*, 205 Ill. App. 3d 153 (1990), and *People v. Heiman*, 286 Ill. App. 3d 102 (1996). In *Smith*, the trial court stopped trial counsel after only one sentence of her closing argument, refused to allow her to continue, stated that it did not think it was " 'required to listen' " to counsel's arguments, and found the defendant guilty. *Smith*, 205 Ill. App. 3d at 156. On appeal, the court found the trial court had denied the defendant "the full benefit of his constitutional right to effective assistance of counsel" by curtailing trial counsel's closing argument. *Id.* at 156-57. The court further noted that a defendant who chooses a bench trial is "entitled to the same fair, patient and impartial consideration he would be entitled to by a jury of fair, impartial, careful and considerate peers." *Id.* at 157. Here, there is no indication that the trial court curtailed trial counsel's closing argument; rather, the record reflects that trial counsel made a closing argument and the trial court's questions did not prevent counsel from arguing the defense theory of the case.

¶ 24    In *Heiman*, we reversed the defendant's conviction and remanded for a new trial when, during the defendant's bench trial, the trial court made "excessive and exaggerated derogatory" comments about the defendant during closing argument as well as negative comments about a defense witness prior to, and after, the witness's cross-examination. *Heiman*, 286 Ill. App. 3d at 108-112. The trial court's 40 to 50 interruptions and arguments with trial counsel during closing argument indicated that it had already decided the case and was not interested in any argument from the defense. *Id.* at 112. Unlike *Heiman*, the trial court in the case at bar did not make any derogatory comments about defendant and did not show a prejudgment of the case before entering

its findings. Rather, it listened to the opening statements of both parties, the examinations of the witnesses, and the arguments on the motion for a directed finding and closing argument, and then entered its findings.

¶ 25 Accordingly, because defendant has not persuaded us that the trial court's questioning during closing argument denied him the right to a closing argument, he cannot establish plain error and his argument must fail. See *Williams*, 193 Ill. 2d at 349.

¶ 26 Defendant nonetheless contends that the trial court's actions during closing argument "not only exposed its bias" against him, but also showed that it prejudged the merits of the case and his guilt.

¶ 27 A defendant has the constitutional right to a fair trial before an unbiased and open-minded trier of fact. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Taylor*, 357 Ill. App. 3d 642, 647 (2005). A fair trial requires not only the absence of actual bias, but also the absence of the probability of bias. *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998). A defendant's fundamental right to a fair trial is violated where the trier of fact prejudges the evidence and renders its judgment prior to the conclusion of the trial. *Heiman*, 286 Ill. App. 3d at 113. To establish a violation of the right to a fair trial before an unbiased trier of fact, a defendant must overcome the presumption of impartiality by establishing actual prejudice. *People v. Moffat*, 202 Ill. App. 3d 43, 56 (1990).

¶ 28 Here, defendant contends that the trial court's questions during closing argument exposed its bias against him. We disagree. Allegations of judicial bias must be viewed in context and evaluated in terms of the specific events that took place. *People v. Jackson*, 205 Ill. 2d 247, 277 (2001). Here, the court questioned trial counsel after all the evidence had been presented and while

the parties were making their closing arguments. As discussed above, the trial court questioned each party about its theory of the case and how the evidence, particularly defendant's oral statement that he was holding the cannabis, affected each theory.

¶ 29 We are unpersuaded by defendant's reliance on *People v. Ojeda*, 110 Ill. App. 2d 480 (1969), and *People v. McDaniels*, 144 Ill. App. 3d 459 (1986). In *Ojeda*, the trial court made statements expressing its disbelief of a defense witness before the witness took the stand. See *Ojeda,* 110 Ill. App. 2d at 482-83. Thus, the timing of the statement reflected the trial court's preconceived attitude regarding the defendant's guilt. *Id*. at 485. Similarly, in *McDaniels*, during trial counsel's examination of a witness, the trial court stated that it was ridiculous for the defendant to claim self-defense, showing that it prejudged the validity of the defense prior to hearing the totality of the evidence. *Id.*at 461-63.

¶ 30 In the case at bar, unlike *Ojeda* and *McDaniels*, there were no comments by the court indicating that it had prejudged the merits of the case or defendant's guilt. Rather, the record shows that the trial court questioned trial counsel about the defense theory of the case. Moreover, as discussed above, the trial court questioned both parties during closing argument in order to understand their arguments and asked the State to respond to the defense's argument.

¶ 31 Defendant has not overcome the presumption of impartiality accorded to the trial court (*Moffat*, 202 Ill. App. 3d at 56), and we therefore conclude that he was not denied his right to a fair trial by an unbiased trier of fact. As defendant has not demonstrated error, his argument must fail. See *Williams*, 193 Ill. 2d at 349.

¶ 32 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 33 Affirmed.