2020 IL App (1st) 181267-U

SIXTH DIVISION
November 30, 2020

No. 1-18-1267

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 60160 |
| | ) | |
| JUWAN ASKEW, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Griffin concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed. Defendant's claim that the trial court denied him a fair trial by prejudging his guilt and erred by not making an independent inquiry regarding his fitness is rejected.

¶ 2    Following a bench trial, defendant Juwan Askew was found guilty of armed robbery with a firearm, aggravated battery, and aggravated unlawful restraint. The trial court merged the counts into one count of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2016)) and sentenced Mr. Askew to 21 years in prison. He appeals, claiming that the trial court denied him a fair trial by prejudging his guilt and erred by not making an independent inquiry regarding his fitness. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4       Mr. Askew and co-offender David Shabazz, who is not a party to this appeal, were charged by information with multiple offenses arising from an incident on July 10, 2016. Mr. Askew was charged with armed robbery with a firearm (count II), aggravated battery (counts XI, XII, XVI, and XVII), and aggravated unlawful restraint (count XV). At pretrial proceedings on August 1, 2016, the court arraigned Mr. Askew. The court also informed Mr. Askew of the charges and potential sentences on August 25, 2016.

¶ 5       On June 13, 2017, defense counsel informed the court that the State had offered Mr. Askew 12 years' imprisonment in exchange for a guilty plea to an unspecified charge. The court admonished Mr. Askew that the offer was "substantially less than the minimum" 21-year sentence that would apply "if the [S]tate proved the *** firearm." The court asked Mr. Askew, "Do you understand that?" Mr. Askew replied, "Yes."

¶ 6       During proceedings on August 8, 2017, Mr. Askew represented that he wanted to stand trial. The court stated to Mr. Askew, "If you are convicted as charged, your minimum is 21. Okay?" Mr. Askew replied, "Yes, sir." The court also stated that Mr. Askew would be "accountable" if the State proved that a firearm was used in an armed robbery, "even if you never handled the gun." Mr. Askew replied, "Yes, sir." The court also offered to hold a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), where Mr. Askew would "hear what [the court] would sentence you to." Mr. Askew declined. The court asked, "Do you have family members you can discuss your decision with?" Mr. Askew replied, "Yes, sir." The court responded, "Please do that before the next court date."

¶ 7       On March 1, 2018, immediately prior to trial, the prosecutor advised the court that she was unsure whether Mr. Askew had been admonished of "a previous offer that was less than the

mandatory minimum." The court then told Mr. Askew that the sentence the State had offered in exchange for a guilty plea was within the range for armed robbery, but below the minimum term for armed robbery with a firearm. Were Mr. Askew convicted of armed robbery with a firearm, "instead of 6 to 30, it would be 21 to 45." The court further stated, "I want to make sure you understand [what] you're rejecting. It's your absolute right to do so. *** You understand that?" Mr. Askew replied, "Yes, sir." The State nol-prossed count XVI for aggravated battery, and the cause proceeded to trial.

¶ 8    Robert Ritner testified that on July 10, 2016, at around 3 p.m., he was walking west on Barry Avenue near Sheffield Avenue in Chicago when two individuals knocked him down. Mr. Ritner identified Mr. Askew in court as one of the individuals. Mr. Askew searched Mr. Ritner's pockets and removed his wallet while the other person held a firearm at Mr. Ritner, then hit Mr. Ritner in the face with it. Bystanders ran toward the scene, and Mr. Askew and the other individual fled east towards Sheffield Avenue. During the incident, Mr. Ritner sustained injuries to his knees, forearms, and face. Later that day, the police returned Mr. Ritner's belongings, including Ventra cards and cash.

¶ 9    On cross-examination, Mr. Ritner confirmed that the other individual, Mr. Shabazz, first knocked him down, though Mr. Askew "joined immediately thereafter." Mr. Ritner acknowledged that he previously testified he did not know which individual took his wallet.

¶ 10    Michael Marlo testified that while working as a Chicago police officer on July 10, 2016, he received a call from an off-duty officer describing an incident near Sheffield and Wellington Avenues. Officer Marlo arrived and met with Officer Martha Gomez, who had detained Mr. Shabazz. Officer Marlo searched Mr. Shabazz and recovered a firearm, Ventra cards, and cash.

¶ 11    During a break in the trial, the judge told Mr. Askew that he "just wanted to make sure"

and that "when [he gave Mr. Askew] what is referred to as the *Curry* admonishments regarding the minimum sentence you're facing *** I told you that if you pled guilty, I'd sentence you to nine years is my recollection." The court explained that Mr. Shabazz pleaded guilty and received a 13-year sentence without the firearm enhancement, and it wanted to ensure Mr. Askew was "aware" of that. The court further explained that if Mr. Askew was convicted, "the minimum, by statute, that I could sentence you to is 21. Do you understand that?" Mr. Askew replied, "Yes, sir," and affirmed that he had discussed this issue with his lawyer and wanted to proceed with the trial.

¶ 12    The trial resumed, and Chicago police officer Pham testified that on July 10, 2016, he was off-duty and walking near Barry and Sheffield Avenues when he saw Mr. Askew and Mr. Shabazz walking on Barry Avenue. He identified Mr. Askew in court. Moments later, Officer Pham heard someone yell for help. Officer Pham looked in the direction of the yell and saw Mr. Askew and Mr. Shabazz on top of the victim. Officer Pham saw Mr. Shabazz with a firearm, and "immediately" drew his firearm and announced his office. Mr. Askew was searching the victim's pockets. Mr. Shabazz and Mr. Askew fled, and Officer Pham pursued and called 9-1-1. Officer Pham identified People's Exhibit No. 9 as the firearm Mr. Shabazz pointed at the victim, and clarified that Mr. Shabazz struck the victim while Mr. Askew searched the victim's pockets.

¶ 13    Retired Chicago police officer Gilbert Lucio testified that while working on July 10, 2016, he and Officer Gomez received a call to assist another officer responding to an armed robbery on the 900 block of West Wellington Avenue. Officer Lucio arrived, joined the pursuit of the suspects, and located Mr. Shabazz and Mr. Askew. Officer Lucio found Mr. Askew, whom he identified in court, in a parking lot under a vehicle. On cross-examination, Officer Lucio testified that Mr. Askew sustained a head injury for which he received treatment at the hospital.

¶ 14    Mr. Askew testified that he was 18 years old on July 10, 2016. He and Mr. Shabazz were

- 4 -

in the area of the incident to "talk to some females." At some point, Mr. Shabazz "went to the left into the street." Mr. Askew did not go with him. Moments later, Mr. Askew heard Mr. Ritner yell for help, looked to his left, and saw Mr. Shabazz aiming a firearm at Mr. Ritner while on top of him. Mr. Askew did not know that Mr. Shabazz had a firearm or planned to attack Mr. Ritner.

¶ 15    Mr. Askew ran across the street and told Mr. Shabazz to stop and did not take anything from Mr. Ritner. An officer approached and announced his office, and Mr. Shabazz and Mr. Askew fled. Mr. Askew ran into a parking garage because he was scared he would be "locked up for something that [he] didn't do." As officers removed Mr. Askew from under a vehicle, Mr. Askew said, "I didn't do anything." One officer kicked Mr. Askew in the head.

¶ 16    On cross-examination, Mr. Askew stated that he lived with Mr. Shabazz in July 2016, but did not know Mr. Shabazz had a firearm. Mr. Askew tried to help Mr. Ritner by grabbing Mr. Shabazz's shoulders and pulling him away.

¶ 17    After closing arguments, the court found Mr. Askew guilty of count II for armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2016)), count XV for unlawful restraint (720 ILCS 10/3.1 (West 2016)), and count XVII for aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West Supp. 2015)). In so holding, the court stated it was "clear" that Mr. Askew was accountable for Mr. Shabazz's acts. The court found Mr. Askew not guilty of counts XI and XII.

¶ 18    Mr. Askew's presentence investigation (PSI) report was file-stamped on March 30, 2018. The PSI report indicated that Mr. Askew's high school expelled him in the ninth grade. He used alcohol once a week and marijuana six days a week. Additionally, Mr. Askew began using Xanax twice a month at age 14. Mr. Askew stopped using marijuana and Xanax 20 months before the PSI interview.

¶ 19    Mr. Askew further reported that at age 11 or 12, his mother admitted him to Hartgrove

Hospital in Chicago, where he stayed for a month. He took Zoloft during this time but stopped after discharge. Additionally, at age 16, he was referred to a mental health professional as part of his juvenile probation. He was not currently in the care of a mental health professional or taking psychotropic medication. In the past 12 months, he experienced excessive fears and auditory and visual hallucinations "every couple of days," and contemplated suicide while incarcerated.

¶ 20    On March 30, 2018, defense counsel filed a motion for a new trial. Additionally, "[b]ased on information *** in the [PSI] report," counsel requested "an order for [a behavioral clinical examination (BCX)] for fitness for sentencing and fitness for trial *nunc pro tunc*." The court granted the motion without comment.

¶ 21    On April 6, 2018, Dr. Christofer Cooper, a forensic psychologist, wrote a letter to the court that was filed on May 9, 2018. In the letter, Dr. Cooper found Mr. Askew fit to stand trial and fit for sentencing. Dr. Cooper concluded that Mr. Askew did not show "symptoms of a mental condition that would preclude his fitness at the present time." Mr. Askew could logically explain what happened at trial and his potential sentences, and could assist in his own defense "if he so chooses." Dr. Cooper believed any conduct suggesting the contrary should be considered "volitional." Additionally, at the time of trial, Dr. Cooper believed Mr. Askew showed no "psychological symptoms that would have compromised his competency." Dr. Cooper also wrote that he "requested [Mr. Askew's] records from Cermak Health Services for review."

¶ 22    On May 9, 2018, the court asked if defense counsel wanted a hearing on Mr. Askew's fitness, to which counsel responded, "I don't think it's required." The court replied, "I'm just asking. I'm not suggesting." Counsel then agreed to "stipulate to the findings in the [BCX] report." The court replied, "All right. This will be in the nature of a fitness hearing." The parties then stipulated that Dr. Cooper would testify that he examined Mr. Askew, and concluded Mr. Askew

was "currently fit to stand trial and for sentencing," and also was fit for trial on March 1, 2018. The court said, "Based on that, there's a finding that Mr. Askew was, in fact, fit for trial" and "fit for sentencing." The court denied Mr. Askew's motion for a new trial, merged the findings of guilt into count II for armed robbery with a firearm, and sentenced Mr. Askew to 21 years in prison. Although the mittimus states that "counts 15 through 17 are merged with count 2," in fact the State nol-prossed count XVI prior to trial, and the trial court did not enter any finding of guilt on that count. The court denied Mr. Askew's motion to reconsider his sentence.

¶ 23                                    II. JURISDICTION

¶ 24    Mr. Askew was sentenced on May 9, 2018, and timely filed his notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from final judgments of conviction in criminal cases.

¶ 25                                    III. ANALYSIS

¶ 26           A. The Trial Court Did Not Improperly Prejudge the Outcome of the Case

¶ 27    On appeal, Mr. Askew first argues that the trial court denied him a fair trial because it prejudged his guilt through repeated reference to his potential sentence if he pleaded guilty. Mr. Askew acknowledges that he did not preserve this claim through a timely objection at trial and inclusion in a posttrial motion, but contends that we may reach the issue because it constitutes plain error and because, pursuant to *People v. Sprinkle*, 27 Ill. 2d 398 (1963), forfeiture rules are relaxed where the misconduct of the trial judge is at issue. See *Sprinkle*, 27 Ill. 2d at 400-01.

¶ 28    We first consider whether any error occurred, which is a necessary predicate for review either under the plain error or the *Sprinkle* exceptions to forfeiture. See *People v. Belknap*, 2014 IL 117094, ¶ 48 (a reviewing court may consider a claim the appellant did not properly preserve

on plain error review "where a clear or obvious error occurred" and other criteria are met); *People v. Minter*, 2015 IL App (1st) 120958, ¶ 113 (in applying *Sprinkle*, we "first examine whether the trial court's comments constituted error"). We find that the comments by the court did not reflect an improper determination by the court that Mr. Askew was guilty of the charged crimes.

¶ 29 Criminal defendants have the right to a fair trial before an unbiased factfinder. *People v. Runge*, 234 Ill. 2d 68, 102 (2009). In a bench trial, the trial judge is presumed to be impartial, and it is the defendant's burden to demonstrate otherwise on appeal. *People v. Romero*, 2018 IL App (1st) 143132, ¶ 96. The factfinder must not predetermine a case's result before hearing all of the evidence and the closing arguments, and doing so may constitute the denial of a fair trial. *People v. Hardin*, 2012 IL App (1st) 100682, ¶ 14. Whether a trial court denied the defendant's right to a fair trial due to bias is reviewed *de novo*. *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 60 (citing *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009)).

¶ 30 The record demonstrates that at a pretrial proceeding on June 13, 2017, defense counsel informed the court that the State had offered Mr. Askew a 12-year sentence in exchange for his guilty plea, and the court told Mr. Askew that if he accepted the offer, he would not be subject to the automatic firearm enhancement. On August 8, 2017, the court again admonished Mr. Askew regarding the firearm enhancement and asked him to speak to his family about the decision to stand trial or plead guilty. On March 1, 2018, immediately before the start of trial, the court again inquired whether Mr. Askew wanted to accept the offer instead of facing the sentencing enhancement should he be found guilty, but stated it was Mr. Askew's "absolute right" to stand trial. Finally, during a break in the trial, the judge admonished Mr. Askew regarding the firearm enhancement after expressing concern that the court had improperly admonished Mr. Askew previously. The court also mentioned that Mr. Shabazz received a 13-year sentence for his guilty

plea, which did not include a firearm enhancement.

¶ 31 On this record, we cannot find that the trial court prejudged Mr. Askew's guilt. While the trial judge was clearly concerned that Mr. Askew understand the minimum sentences that would have to be imposed if he was found guilty, this does not demonstrate that the court prejudged him as guilty. Mr. Askew points to no specific language the court used that indicates the court had made any decision about the outcome. While the court repeatedly informed Mr. Askew of the facts of his potential sentence and how the firearm enhancement required a specific minimum sentence, the court did not address the evidence or the likelihood of conviction. It is Mr. Askew's burden to overcome the presumption that the trial court properly considered the evidence, and, on this record, Mr. Askew fails to meet this burden. See *Romero*, 2018 IL App (1st) 143132, ¶ 96.

¶ 32 Mr. Askew's cited cases are quite different. In *People v. Crawford*, 343 Ill. App. 3d 1050 (2003), this court remanded for a new trial because the trial court interrupted defense counsel's closing argument so often that it essentially deprived the defendant of the benefit of the closing argument. *Crawford*, 343 Ill. App. 3d at 1056-62. Nothing like that occurred here.

¶ 33 Mr. Askew also cites *People v. Darnell*, 190 Ill. App. 3d 587 (1989), where the trial judge interrupted the trial to initiate plea negotiations. *Darnell*, 190 Ill. App. 3d at 589-91. The reviewing court found this inappropriate both because the trial court's initiation of the negotiations violated Illinois Supreme Court Rule 402 and because the timing of the interruption created an "inference that the judge had reached a conclusion of guilt prior to the presentation of all the evidence." *Id.* at 591. In this case, in contrast, the court's comments were clearly not based on the evidence but rather on the judge's concern about the lengthy minimum sentence that Mr. Askew faced if he were convicted. Moreover, the judge did not initiate the plea discussions but was following up on a plea offer that had been made by the State.

¶ 34    Mr. Askew also argues that the trial court improperly considered Mr. Shabazz's guilty plea, demonstrating a failure to compartmentalize the evidence against each of the defendants. This argument fails, however, as Mr. Askew points to nothing in the record to demonstrate that Mr. Shabazz's plea influenced the court in evaluating Mr. Askew's guilt or innocence. Rather, the record reveals that the trial court commented on Mr. Shabazz's sentence in an effort to ensure Mr. Askew understood the firearm enhancement and how it affected the sentence he faced if found guilty of armed robbery with a firearm.

¶ 35    Mr. Askew has not demonstrated that the trial court prejudged his guilt or improperly failed to compartmentalize the evidence against the two defendants. As such, there was no error by the trial court, and we need not consider whether either plain error or the *Sprinkle* rule would overcome any possible forfeiture.

¶ 36        B. There Was No *Bona Fide* Doubt as to Mr. Askew's Fitness

¶ 37    Mr. Askew next claims that the trial court erred by accepting the parties' stipulation to an expert opinion that he was fit to stand trial. According to Mr. Askew, a *bona fide* doubt as to his fitness existed, requiring the court to conduct an independent inquiry regarding his fitness. Mr. Askew failed to preserve this issue through a timely objection and inclusion in a posttrial motion but contends that we can reach the issue on plain error review. Once again, our first step is to determine whether a clear or obvious error occurred. *Reese*, 2017 IL 120011, ¶ 60.

¶ 38    Due process requires that a defendant be mentally fit before standing trial. *People v. Holt*, 2014 IL 116989, ¶ 51. Defendants are presumed fit to plead, stand trial, and be sentenced. 725 ILCS 5/104-10 (West 2016). A defendant may be deemed unfit if because of a mental or physical condition, "he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." *Id.* A defendant's history of mental health issues does not automatically

render him unfit to stand trial. See *People v. Eddmonds*, 143 Ill. 2d 501, 519 (1991).

¶ 39    The procedure outlined in the statute is as follows:

"Raising Issue; Burden; Fitness Motions. (a) The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court at any appropriate time before a plea is entered or before, during, or after trial. When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further.

(b) Upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if a bona fide doubt as to his or her fitness to stand trial may be raised, the court, in its discretion, may order an appropriate examination. However, no order entered pursuant to this subsection shall prevent further proceedings in the case. An expert so appointed shall examine the defendant and make a report as provided in Section 104-15. Upon the filing with the court of a verified statement of services rendered, the court shall enter an order on the county board to pay such expert a reasonable fee stated in the order." 725 ILCS 5/104-11 (West 2016).

¶ 40    As the statute makes clear, the defendant's fitness can be raised by the parties or *sua sponte* by the court at any time before, during, or after trial. 725 ILCS 5/104-11(a) (West 2016). In determining whether a *bona fide* doubt as to a defendant's fitness exists, a court may consider the "defendant's irrational behavior, demeanor at trial, any prior medical opinion on the defendant's competence, and any representations by defense counsel on the defendant's competence." *People v. Brown*, 236 Ill. 2d 175, 186-87 (2010). The court may order a qualified expert to examine a defendant and determine if a *bona fide* doubt exists as to his fitness. 725 ILCS 5/104-11(b) (West

2016). Such an order does not constitute a finding that a *bona fide* doubt exists. *People v. Hanson*, 212 Ill. 2d 212, 222 (2004). Whether a *bona fide* doubt exists as to a defendant's fitness is generally a matter within the discretion of the trial court. *People v. Simpson*, 204 Ill. 2d 536, 550 (2001).

¶ 41 The very claim that Mr. Askew raises was just addressed by our supreme court in *People v. Brown*, 2020 IL 125203. There, as in this case, defense counsel asked the court to order a fitness evaluation for the defendant. *Id.* ¶ 4. That evaluator concluded that the defendant was fit to stand trial. The trial judge found the defendant fit "by agreement" of the parties. *Id.* ¶ 13. The appellate court reversed the defendant's conviction on the basis that the trial court had not exercised its judicial discretion in finding the defendant fit to stand trial. Our supreme court reversed the decision of the appellate court, holding:

> "It is clear from the record, then, that neither the parties nor the trial court had a *bona fide* doubt of [the] defendant's fitness, either at the time that Judge Kouri appointed Dr. Finkenbine to examine defendant or 30 days later when defense counsel tendered Dr. Clore's report to Judge Hoos. Defense counsel never stated at any point in the proceeding that he had a *bona fide* doubt of [the] defendant's fitness to stand trial, the trial court never made such a finding, and no party ever requested a fitness hearing. Absent a *bona fide* doubt concerning his fitness to stand trial, [the] defendant was not entitled to a fitness hearing before Judge Hoos. Accordingly, the trial court did not commit any error, let alone plain error, in setting the case for trial without conducting a fitness hearing." *Id.* ¶ 43.

¶ 42 The record in this case shows that, on March 30, 2018, the court granted defense counsel's motion for a BCX without comment. Prior to that date, the issue of Mr. Askew's fitness was not raised, and Mr. Askew testified cogently at trial. The PSI report filed on March 30, 2018, mentioned that Mr. Askew had been hospitalized and prescribed Zoloft in the past, had a history

of alcohol, marijuana, and Xanax usage, and had experienced excessive fear, auditory and visual hallucinations, and suicidal ideations. Based on that report, defense counsel asked for a fitness evaluation.

¶ 43    Dr. Cooper examined Mr. Askew and concluded in his report that Mr. Askew had been fit at the time of trial and was fit for sentencing. At the next hearing date, the trial court asked defense counsel whether he wanted a fitness hearing. Counsel stated that no hearing was necessary and agreed to stipulate to the "findings" in the BCX report. The trial court accepted this representation, said the stipulation would be "in the nature" of a fitness hearing, and then accepted the parties' stipulation that Dr. Cooper would testify that Mr. Askew was fit to stand to trial and be sentenced, and had been fit at the time of trial on March 1, 2018. Based on the stipulation, the court found that Mr. Askew was fit for trial and for sentencing.

¶ 44    The record shows that when the court granted the BCX motion it had not made any finding that there was a *bona fide* doubt as to Mr. Askew's fitness. Rather, the BCX was intended to determine whether a *bona fide* doubt as to fitness existed. Mr. Askew's fitness was not discussed before the March 30, 2018, hearing, and he testified at trial without issue. Mr. Askew cites the court's language on May 9, 2018, that the stipulation would be "in the nature of a fitness hearing" as proof that the trial court had a *bona fide* doubt of his fitness and then conducted a deficient inquiry. When read in context with the proceedings on that date and previously, however, this comment does not demonstrate that the court found that a *bona fide* doubt existed or that, in substance, the day's proceedings were a fitness inquiry. Rather, the proceedings as a whole demonstrate that because the court had not found any *bona fide* doubt in the past, and the expert's evaluation also concluded there was no *bona fide* doubt, the matter could continue to sentencing without an independent inquiry. In this scenario, as our supreme court just made quite clear in

*Brown*, the court may accept a stipulation as to the absence of any *bona fide* doubt as to the defendant's fitness.

¶ 45    Mr. Askew further argues that his medical history as described in the PSI report necessitated the finding of a *bona fide* doubt as to his fitness. It is well-established, however, that a defendant's previous mental health issues, including a mental illness diagnosis and auditory hallucinations, are not enough on their own to demonstrate a *bona fide* doubt as to fitness. See *People v. Fields*, 331 Ill. App. 3d 323, 329 (2002) ("The facts that the defendant was being housed in the residential treatment unit ***, that he was suffering from auditory hallucinations and that he was receiving Haldol do not raise a *bona fide* doubt as to his fitness to stand trial.").

¶ 46    In light of Mr. Askew's conduct during the litigation, the BCX's conclusion, and the fact that no issue as to Mr. Askew's fitness had been raised at any point before the posttrial request on March 30, 2018, we cannot find that the trial court here abused its discretion by not *sua sponte* finding a *bona fide* doubt as to Mr. Askew's fitness and conducting an independent examination on that issue.

¶ 47                                        IV. CONCLUSION

¶ 48    For the above reasons, Mr. Askew's conviction is affirmed.

¶ 49    Affirmed.